Nos. 22-1455, -1456

IN THE

# United States Court of Appeals for the Federal Circuit

COREPHOTONICS, LTD.,

*Appellant,*

*v.*

APPLE INC.,

*Appellee.*

On Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board
Nos. IPR2020-00861 and IPR2020-00862

## CORRECTED RESPONSE BRIEF OF APPELLEE APPLE INC.

Erin M. B. Leach
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
(949) 852-7766

Mark S. Davies
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005
(202) 339-8400

*Counsel for Appellee Apple Inc.*

# CLAIM LANGUAGE AT ISSUE

## U.S. Patent No. 10,230,898

1. A zoom digital camera comprising:

a) a Wide imaging section that includes a fixed focal length Wide lens with a Wide field of view (FOV) and a Wide sensor, the Wide imaging section operative to provide Wide image data of an object or scene;

b) a Tele imaging section that includes a fixed focal length Tele lens with a Tele FOV that is narrower than the Wide FOV and a Tele sensor, the Tele imaging section operative to provide Tele image data of the object or scene; and

c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured to evaluate if a no-switching criterion is fulfilled or not fulfilled, wherein if the no-switching criterion is fulfilled in a zoom-in operation between a lower zoom factor (ZF) value and a higher ZF value at a zoom factor (ZF) higher than an up-transfer ZF, the camera controller is further configured to output a zoom video output image that includes only Wide image data, and wherein if the no-switching criterion is not fulfilled, the camera controller is further configured to output a zoom video output image that includes only transformed, digitally zoomed Tele image data.

\*\*\*

4. The camera of claim 1, wherein the no-switching criterion includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image.

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 22-1455, 22-1456

**Short Case Caption** Corephotonics, Ltd. v. Apple Inc.

**Filing Party/Entity** Apple Inc.

---

**Instructions:** Complete each section of the form. In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance. **Please enter only one item per box; attach additional pages as needed and check the relevant box.** Counsel must immediately file an amended Certificate of Interest if information changes. Fed. Cir. R. 47.4(b).

---

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 11/22/2022

Signature: /s/ Erin M. B. Leach

Name: Erin M. B. Leach

i

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. ☑ None/Not Applicable |
| Apple Inc. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐    Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable           ☐    Additional pages attached

| | | |
|---|---|---|
| Haynes and Boone, LLP | Michael S. Parsons | Andrew S. Ehmke |
| Jordan Maucotel | Hong Shi | David W. O'Brien |
| Stephanie Sivinski | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable           ☐    Additional pages attached

| | | |
|---|---|---|
| Corephotonics, Ltd. v. Apple Inc. No. 5:19-cv-04809-EJD (N.D. Cal.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable           ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................. i

TABLE OF AUTHORITIES ................................................................ vii

STATEMENT OF RELATED CASES ........................................... xi

INTRODUCTION ......................................................................................1

JURISDICTIONAL STATEMENT ..........................................................3

STATEMENT OF THE ISSUES ..............................................................4

STATEMENT OF THE CASE ..................................................................5

    Emulating A Zoom Lens By Switching Between A Wide
        Lens And A Tele Lens Is Well-known. ..................................5

    The '898 And '332 Patents Describe A Dual Lens
        Digital Camera That Provides A Continuous,
        Smooth Zoom In Video Mode. ..............................................14

    Apple Files Two Inter Partes Review Petitions, And
        The Board Institutes Review On Both Of Them. .................18

    The Board Held All Challenged Claims Unpatentable
        For Obviousness. ...................................................................23

SUMMARY OF THE ARGUMENT ........................................................31

STANDARD OF REVIEW .....................................................................34

ARGUMENT ...........................................................................................36

    I.    The Board Properly Deemed Golan And Martin
        Analogous Prior Art. .............................................................36

        A.    The Board did not err in accepting Apple's
            timely analogousness arguments. ...............................37

            1.    Apple's prima facie obviousness case
                did not require detailed reasons why
                each prior art reference was analogous
                art. ...................................................................38

2.  Corephotonics received early notice, and subsequently acknowledged, that Golan is analogous art to the claimed invention. ........................................... 43

3.  The Board properly considered the entire record to determine that Golan and Martin were analogous art and gave Corephotonics several opportunities to respond. .................................... 45

B.  The Board's analogousness determinations are supported by substantial evidence. ....................... 52

1.  Substantial evidence supports the Board's factual finding that Golan is in the same field of endeavor as the claimed invention. ............................................... 53

2.  Substantial evidence supports the Board's factual finding that Martin is reasonably pertinent to the same problem faced by the inventors of the claimed invention. .............................................. 57

II.  The Board Correctly Construed "Effective Resolution" And Substantial Evidence Supports The Board's Finding That Togo Teaches The "Effective Resolution" Limitation. ........................................ 63

A.  The Board's construction of the term "effective resolution" adheres to the intrinsic record. ........................................... 64

B.  The Board did not err in finding that Togo teaches the effective resolution no-switching limitation. ................................................................... 66

1.  Substantial evidence supports the Board's finding that Togo teaches the effective resolution no-switching limitation. ....................................................... 67

2.    Corephotonics's argument that Togo
       fails to teach the effective resolution
       switching criterion limitation lacks
       both support and merit. ...................................... 69

CONCLUSION ............................................................................ 71

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aker Biomarine Antarctic AS v. Rimfrost AS,*
786 F. App'x 251 (Fed. Cir. 2019) ....................................... 67

*Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC,*
825 F.3d 1373 (Fed. Cir. 2016) .......................................... 36

*Anacor Pharms., Inc. v. Iancu,*
889 F.3d 1372 (Fed. Cir. 2018) .......................................... 47

*Apple Inc. v. Qualcomm Inc.,*
IPR2018-01245, Paper 39, 2020 WL 253090 (P.T.A.B.
Jan. 15, 2020) ................................................ 40, 41, 47, 48

*Ariosa Diagnostics v. Verinata Health, Inc.,*
805 F.3d 1359 (Fed. Cir. 2015) .......................................... 46

*Belden Inc. v. Berk-Tek LLC,*
805 F.3d 1064 (Fed. Cir. 2015) .......................................... 52

*In re Bigio,*
381 F.3d 1320 (Fed. Cir. 2004) .......................................... 37

*Circuit Check, Inc. v. QXQ Inc.,*
795 F.3d 1331 (Fed. Cir. 2015) .......................................... 62

*In re Clay,*
966 F.2d 656 (Fed. Cir. 1992) ........................................... 62

*Comaper Corp. v. Antec, Inc.,*
596 F.3d 1343 (Fed. Cir. 2010) .......................................... 36

*Cuozzo Speed Techs., LLC v. Lee,*
579 U.S. 261 (2016) .................................................. 38, 39

*CyWee Grp., Ltd. v. Google LLC,*
847 F. App'x 910 (Fed. Cir. 2021) ....................................... 60

*Donner Tech., LLC v. Pro Stage Gear, LLC,*
    979 F.3d 1353 (Fed. Cir. 2020) ................................................ 34, 60, 63

*Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.,*
    800 F.3d 1375 (Fed. Cir. 2015) .................................................... 46

*Ethicon LLC v. Intuitive Surgical, Inc.,*
    2022 WL 1576779 (Fed. Cir. May 19, 2022)..................................... 62

*In re Ethicon, Inc.,*
    844 F.3d 1344 (Fed. Cir. 2017) .................................................... 36

*Genzyme Therapeutic Prods. L.P. v. Biomarin Pharm. Inc.,*
    825 F.3d 1360 (Fed. Cir. 2016) ............................................ 34, 38, 50

*Hill-Rom Servs., Inc. v. Stryker Corp.,*
    755 F.3d 1367 (Fed. Cir. 2014) ............................................ 35, 65, 66

*HTC Corp. v. Cellular Commc'ns Equip., LLC,*
    877 F.3d 1361 (Fed. Cir. 2017) .................................................... 34

*In re ICON Health & Fitness, Inc.,*
    496 F.3d 1374 (Fed. Cir. 2007) .................................................... 34

*Infineum USA L.P. v. Chevron Oronite Co. LLC,*
    No. 2020-1333, 2022 WL 3147683 (Fed. Cir. Aug. 8, 2022)......... 43, 50

*Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.,*
    821 F.3d 1359 (Fed. Cir. 2016) .................................................... 41

*In re Kahn,*
    441 F.3d 977 (Fed. Cir. 2006) ..................................................... 36

*Kamstrup A/S v. Axioma Metering UAB,*
    43 F.4th 1374 (Fed. Cir. 2022)..................................................... 35

*In re Klein,*
    647 F.3d 1343 (Fed. Cir. 2011) .................................................... 44

*KSR Int'l Co. v. Teleflex Inc.,*
    550 U.S. 398 (2007).............................................................. 40, 42

*Luminara Worldwide, LLC v. Liown Elecs., Co.*,
  814 F.3d 1343 (Fed. Cir. 2016) ........................................ 65

*Nike, Inc. v. Adidas AG*,
  No. 2021-1903, 2022 WL 4002668 (Fed. Cir. Sept. 1, 2022) ............. 35

*Palo Alto Networks, Inc. v. Finjan, Inc.*,
  777 F. App'x 501 (Fed. Cir. 2019) ..................................... 39

*Parrot S.A. v. Drone Techs., Inc.*,
  IPR2014-00730, Paper 27, 2015 WL 6180964 (P.T.A.B.
  Oct. 20, 2015) ................................................... 41, 48

*Raytheon Techs. Corp. v. GE Co.*,
  993 F.3d 1374 (Fed. Cir. 2021) ........................................ 70

*In re Smith Int'l, Inc.*,
  871 F.3d 1375 (Fed. Cir. 2017) ........................................ 35

*Teva Pharms. U.S.A., Inc. v. Sandoz, Inc.*,
  574 U.S. 318 (2015)................................................... 35

*TRUSTID, Inc. v. Next Caller, Inc.*,
  No. 2020-1950, 2021 WL 4427918 (Fed. Cir. Sept. 27, 2021) ............ 34

*Unwired Planet, LLC v. Google Inc.*,
  841 F.3d 995 (Fed. Cir. 2016) ......................................... 40

*Valmont Indus. v. Lindsay Corp.*,
  730 F. App'x 918 (Fed. Cir. 2018)...................................... 38

*Wasica Fin. GMBH, etc. v. Cont'l Auto. Sys.*,
  853 F.3d 1272 (Fed. Cir. 2017) ....................... 42, 48, 49, 53

**Statutes**

28 U.S.C. § 1295(a)(4)(A)............................................. 4

35 U.S.C. § 103 .......................................... 36, 38, 44, 45, 70

35 U.S.C. § 142 ...................................................... 4

35 U.S.C. § 311 ................................................................. 3

35 U.S.C. § 312 ............................................... 3, 39, 41, 48

35 U.S.C. § 312(a)(3) ..................................................... 39

35 U.S.C. § 314(d) ......................................................... 39

**Rules and Regulations**

37 C.F.R. § 42.5(b) ...................................................... 51

37 C.F.R. § 42.22 ......................................................... 51

37 C.F.R. § 42.23(b) ............................................... 46, 51

37 C.F.R. § 42.104 .......................................................... 3

37 C.F.R. § 90.3(a)(1) ..................................................... 4

Fed. Cir. R. 15(a)(1) ........................................................ 4

## STATEMENT OF RELATED CASES

No appeal from the same proceeding was previously before this Court or any other appellate court.

Counsel is aware that the following case may directly affect or be directly affected by this Court's decision in the pending appeal:

> *Corephotonics, Ltd. v. Apple Inc.*, No. 3:19-cv-04809-JD (N.D. Cal.).

Pursuant to this Court's orders, the following cases have been designated as companions to this appeal:

> *Apple Inc. v. Corephotonics, Ltd.*, No. 22-1324
>
> *Apple Inc. v. Corephotonics, Ltd.*, Nos. 22-1350, 22-1351
>
> *Corephotonics, Ltd. v. Apple Inc.*, Nos. 22-1340, 22-1341

The following case is related to this appeal:

> *Apple Inc. v. Corephotonics, Ltd.*, Nos. 22-1325, 22-1327, 22-1453, 22-1457

**INTRODUCTION**

Zoom is one of the oldest, most well-known techniques in videography. When a camera zooms in on an object, that object fills the image and appears larger and closer to the viewer. Professional photographers and amateurs alike have long used zoom to magnify an object's finest details and to observe features not otherwise perceptible.

Zoom techniques underlie this consolidated patent appeal. The Board properly found claims 1, 4, 8-12, 15, 19, and 20 of U.S. Patent No. 10,230,898 ("the '898 patent") and claims 1, 2, 5, 9-14, 17, 21, and 22 of U.S. Patent No. 10,356,332 ("the '332 patent") obvious over several grounds, including the combination of Golan, Martin, and Togo. After thoroughly analyzing the parties' arguments, the record evidence, and the asserted prior art, the Board reasonably determined that the combinations taught the recited claim limitations and were supported by sufficient rationale. Nothing in Corephotonics's briefing justifies disturbing the Board's sound decision.

On appeal, Corephotonics raises mainly procedural arguments about whether the Board relied on analogousness theories that were allegedly absent from the petitions. But these arguments lack merit.

1

First and foremost, no mandate compels IPR petitioners, including Apple, to prove in their petition that every prior art reference applied in an obviousness ground is analogous art. Regardless, Apple's petitions put Corephotonics on notice that Golan and Martin were analogous art. The Board then instituted *inter partes* review based on grounds involving those two references. The Board gave Corephotonics multiple meaningful opportunities to respond to those grounds. Indeed, Corephotonics addressed those grounds in its patent owner response, its sur-reply, and its oral hearing argument. Corephotonics cannot manufacture a procedural violation where none exists.

In addition to its procedural arguments, Corephotonics half-heartedly argues that the Board's analogousness findings lack sufficient evidentiary support. This argument fares no better than the first. Tellingly, Corephotonics belatedly argues for the first time on appeal that Golan was nonanalogous art. That argument is forfeited. Apart from forfeiture, Corephotonics's sufficiency argument must fail for the independent reason that it is wrong. The Board's analogousness findings were reasonably drawn from the record evidence, and thus, are supported by substantial evidence. They were grounded in the prior art disclosures

of Golan and Martin and the unrebutted testimony of Apple's expert, Dr. Durand.

Finally, Corephotonics argues (incorrectly) that Togo fails to teach the "effective resolution" limitation recited in certain dependent claims. The Board construed "effective resolution" consistent with this Court's precedent by declining Corephotonics's request to improperly read limitations from the specification into the claims. And substantial evidence—i.e., Togo's disclosure and Dr. Durand's expert testimony— more than supports the Board's conclusion that Togo teaches the claimed "effective resolution," no-switching limitation.

This Court should affirm.

## JURISDICTIONAL STATEMENT

Apple filed petitions for *inter partes* review of the '898 and '332 patents, respectively. *See* Appx1001-1088; Appx10001-10087; 35 U.S.C. §§ 311, 312; 37 C.F.R. § 42.104. The Board instituted proceedings. Appx1111-1154; Appx10111-10154. On December 7, 2021, the Board issued a Final Written Decision invalidating claims 1, 4, 8-12, 15, 19, and 20, Appx1-74 (-861 IPR), and a Final Written Decision invalidating claims 1, 2, 5, 9-14, 17, 21, and 22, Appx75-149 (-862 IPR). On February

8, 2022, Corephotonics filed its notices of appeal. *See* Appx1457-1535, Appx10464-10543; 35 U.S.C. § 142; 37 C.F.R. § 90.3(a)(1); Fed. Cir. R. 15(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A).

## STATEMENT OF THE ISSUES

1.    Did the Board's analogous art findings violate the APA when the Board provided adequate notice of the issues and an opportunity to respond at meaningful points during the *inter partes* review proceeding?

2.    Was the Board's finding that Golan and Martin were analogous art supported by substantial evidence when the Board considered the prior art disclosures and credited expert testimony that Golan and Martin were analogous to the claimed inventions?

3.    Was the Board right to refuse to read an unclaimed limitation from the specification into the claims to construe "effective resolution," in the absence of express lexicography or clear disclaimer?

4.    Does substantial evidence support the Board's finding that based on the intrinsic and extrinsic evidence, Togo discloses the claimed effective-resolution no-switching criterion, as construed?

# STATEMENT OF THE CASE

## *Emulating A Zoom Lens By Switching Between A Wide Lens And A Tele Lens Is Well-known.*

This case is about digital cameras that allow users to zoom while recording video. Video zoom technologies are very old and very well-known.

***The basics***. Two types of camera zoom exist—optical zoom and digital zoom. *See* Appx5670 (Border ¶ 0004). Optical zoom is typically accomplished using a lens with variable focal length. *See* Appx158 (1:32-37). That is, mechanical elements in the lens move relative to one another to vary the focal length and zoom in or out on a scene. Variable focal length lenses are "more expensive, larger and less reliable than fixed focal length lenses," (e.g., lenses that cannot perform optical zoom because they have an invariable focal length). *See* Appx158 (1:36-46).

Digital zoom is an alternative to optical zoom. *See* Appx158 (1:46-51). Instead of using a variable focal length lens, digital zoom magnifies an image captured with a fixed focal length lens by "cropping" out the edges of the image and making the captured objects appear larger because they fill more space in the image. *See, e.g.*, Appx5670 (Border ¶ 0004); Appx158 (1:46-51). Digital zoom, and its tradeoffs from optical

5

zoom, are well known in the art. *See* Appx5670 (Border ¶¶ 0004, 0006).

Although digital zoom is fast and simple, one downside is that it produces

images that have lower resolution than those produced with optical zoom.

*See id.*; Appx158 (1:48-51). "[T]he decrease in resolution can produce a

perceived decrease in image quality." Appx5670 (Border ¶ 0006).

   ***The prior art.***   Imaging systems, such as cell phones, that

incorporate multiple fixed focal length lenses are known to address the

resolution deficiencies of digital zoom by using two or more lenses with

fixed focal lengths that differ from each other to approximate the effect

of a variable focal length lens. *See, e.g.*, Appx158 (1:52-53); Appx5671

(Border ¶ 0025); Appx5645 (Parulski (5:21-35)).

   For example, U.S. Patent No. 7,859,588 to Parulski teaches a cell

phone with a dual-lens digital camera that operates in both still and

video modes. *See* Appx5643, Appx5648 (Parulski) (1:14-15; 12:36-39).

Parulski's camera simulates optical zoom by switching from a wide-angle

lens to a telephoto lens. *See* Appx5648 (Parulski (11:51-55)). Specifically,

if a user selects a zoom value within a low zoom range (e.g., 1X to 3X

zoom), the system will digitally-zoom the image captured using the lens

with a shorter focal length; and if the user switches to a higher zoom

6

value outside of the low zoom range, the system will begin digitally zooming the image from the lens with a longer focal length. *See, e.g.*, Appx5647 (Parulski (10:31-58)). This technique improves image quality along a given zoom range because, as is well established in the art, a "wide image 204 covers a wide portion of the scene and [a] telephoto image 206 covers a smaller portion of the scene, but with greater resolution." Appx5673 (Border ¶ 0047).

Figure 15B of Parulski illustrates a cell phone with a telephoto lens and a wide-angle lens.



**FIG. 15B**

Appx5628 (Parulski (Fig.15B)) (annotation added). Figure 6 of U.S. Patent Application Publication No. 2008/0030592 to Border et al.

("Border") illustrates the difference between a wide-angle image and the corresponding telephoto image.



See Appx5668 (Border at Figure 6) (color annotations added).

Japanese Patent Application Publication No. JP2011-55246 to Togo ("Togo"), like Parulski, also discloses a "zoom" switching technique. Togo describes a conventional mobile device 17 that includes a camera with a wide-angle lens module 1 and a telephoto lens module 2. *See* Appx5681 ¶ 0007-0008. As shown in Figure 4 below, the telephoto lens has a long focal length; the wide-angle lens has a short focal length. *See id.*



Appx5691 (Togo (Fig. 4)) (annotations added).

8

To "zoom" with a camera with two different lenses, a user selects a particular magnification (X), and the camera will engage the wide-angle lens or the telephoto lens. *See* Appx5686 ¶ 0064. Generally, "when the user sets a high magnification, a switch is made from the wide-angle imaging module to the telephoto imaging module." Appx5682 (Togo ¶ 0013). And when the user sets a low magnification, no switching occurs. *See* Appx5685 ¶ 0047. In the latter scenario, an enlarged image is created by digitally zooming in on (i.e., cropping) the wide-angle image. *See id.* Figure 5 of Togo illustrates the zoom switching process: (1) at a minimum magnification X, the entire displayed image is generated by the wide-angle module; (2) at magnification 1.5X, the slightly enlarged image is created by digitally zooming in on (i.e., cropping) the wide-angle image; (3) at magnification 4X, the telephoto image is incorporated in the center of a digitally-zoomed image cut out from the wide angle image; and (4) at magnification 5X, the entire image displayed is generated by the telephoto module. *See* Appx5684-5685 ¶¶ 0043-0048.

9



Appx5692 (Togo (Fig. 5)) (annotations added).

As Togo explains, telephoto images can be blurry when the captured object is close to the camera. *See* Appx5685 ¶ 0057; Appx5681 ¶ 0012 ("a telephoto imaging module . . . is less sharp at close distances compared to a wide-angle imaging module"). Thus, to "suppress degradation of a high-magnification image at a close distance," Appx5686 ¶ 0064, Togo teaches an alternative method for generating enlarged images using cutout images (i.e., digital zooms) of a wide-angle image instead of using a telephoto image, *see* Appx5685 ¶ 0054-0055. According to Togo, "it is favorable to use the cutout image (digitally zoomed image) of the wide-angle image, without compositing the telephoto image in telephoto at a

10

close distance," Appx5686 ¶ 0059, because "at the close distance [ ], a cutout image 22 of the wide-angle image has a more favorable image quality than the telephoto image 23," Appx5685 ¶ 0058; *see* annotated Figure 7 below.  Figure 6 illustrates Togo's no-switch, zoom process.



Appx5693 (Togo (Fig. 6)) (annotations added).

However, when the subject of the image is further away, "the imaging quality of the cutout image 22 of the wide-angle image becomes poorer than the image quality of the telephoto image 23," and the telephoto image is preferred.  Appx5686 ¶ 0066.  Thus, Togo's camera system compares the "image qualities of enlarged image 22 of the wide-angle image 20 and the telephoto image 21 at the long distance (B) in FIG. 7."  Appx5686 ¶ 0067.  When "a pixel density [i.e., the number of pixels in a given area] of the telephoto image 21 is greater than the

enlarged image 22 of the wide-angle image 20[,] the image quality is improved." Appx5686 ¶ 0069 (parentheses omitted). As such, "switching to the telephoto image becomes effective." *Id.*



Appx5694 (Fig. 7) (annotations added). Put simply, the prior art teaches that, in certain circumstances, it disadvantageous to "switch" from a wide-angle lens to a telephoto lens while zooming.

Additionally, the prior art teaches switching between the Wide camera and the Tele camera in a manner that achieves continuous,

uninterrupted imaging (i.e., "continuous electronic zoom").   *See, e.g.*, Appx5575 (Golan) ¶ 0014-0015.   For example, U.S. Patent Application Publication No. 2012/0026366 to Golan ("Golan") discloses a camera system with a Wide lens 122 and a Tele lens 120, each having a respective fixed zoom value.   *See* Appx5577 ¶ 0043.   When a user selects a zoom factor, Golan's zoom controller 130 acquires an image from the Tele camera or the Wide camera, whichever has the zoom value closest to the selected zoom factor.   *See id.* ¶ 0046-0048; Appx5569, Fig. 2.   Next, the zoom controller 130 computes the zoom factor between the fixed zoom value of the selected camera and the user-selected zoom factor.   *See* Appx5577 ¶ 0049.   "Based on the computed factor, zoom control 130 performs electronic zoom on the acquired image frame to meet the requested zoom."   *Id.*   That is, the controller crops the acquired image down to a centered area of the image.   *See* Appx5575 ¶ 0003.   Figure 1 illustrates Golan's zoom camera system.



Appx5568 (Fig. 1) (annotations added).

### *The '898 And '332 Patents Describe A Dual Lens Digital Camera That Provides A Continuous, Smooth Zoom In Video Mode.*

On August 13, 2015, Corephotonics filed a provisional patent application that eventually became the '898 patent, entitled "Dual Aperture Zoom Camera With Video Support And Switching / Non-switching Dynamic Control." Appx150. The Patent Office performed a short examination and sent one 5-page non-final Office Action before issuing the '898 patent on March 12, 2019. *See* Appx1010-1012. Approximately two months before the '898 patent issued, Corephotonics filed a continuation application on Jan. 7, 2019. Appx165. The Patent Office immediately allowed the application without sending any Office Actions, and it issued as the '332 patent on July 16, 2019. Appx10010.

The challenged patents describe "dual-aperture (also referred to as

dual-lens or two-sensor) optical zoom digital cameras." Appx159 (3:26-28).[1] Both cameras have a lens with fixed focal length. One camera has a Wide lens used for lower zoom ranges; the other camera has a Tele lens used for higher zoom ranges. *See id.* (3:28-32). Like their predecessors, the challenged patents mimic optical zoom by switching between Wide and Telephoto lenses and digitally processing the resultant images. *See, e.g.*, Appx159, Appx161 (3:38-41; 7:42-44, 61-66). For example, when a user selects a particular magnification or zoom factor (ZF), the disclosed camera system engages the Wide lens or the Tele lens based on the user's selection. *See* Appx160 (5:14-21).

Generally, if the selected zoom factor is between 1 and a predetermined $Z_{switch}$ value (i.e., the zoom value at which the Tele lens image is preferable to the Wide lens image), the zoom is performed with an image captured using the Wide lens; but from $Z_{switch}$ and on, zoom is performed mainly using an image from the Tele lens. *See* Appx161 (7:61-63). The challenged patents also note that "to prevent 'jumps' (roughness in the image)" while transitioning between the Wide and the Tele lenses,

---

[1] The written descriptions of the two challenged patents do not differ in any way relevant to this appeal, so the following patent citations refer to the '898 patent, unless otherwise noted.

"switching to the Tele image is done using a zoom factor which is a bit higher ($Z_{switch}$ + $\Delta$Zoom) than $Z_{switch}$." *Id.* (7:63-66); *see id.* (7:41-48; 8:8-17); Appx159 (3:15).

Like Togo, the challenged patents disclose that in some cases "there will be no switching from the Wide to the Tele camera output, i.e. the output will be from the Wide camera, digitally zoomed," even though the selected zoom factor is above $Z_{switch}$ + $\Delta$Zoom. Appx162 (9:60-66). Put differently, the patents teach that "[s]witching from the Wide camera output to the transformed Tele camera output" will not take place if "some special condition (criterion), determined based on inputs obtained from the two camera images, occurs." *Id.* (10:1-5); *see* Appx159 (3:44-46) ("when a no-switching criterion is fulfilled, optical zoom is achieved in video mode without switching"). The challenged patents list six "no-switching criteria" that will block switching from the Wide lens image to the Telephoto lens image, only one of which is relevant to this appeal.

No-switching criterion #3: "In some exemplary embodiments, the no-switching criterion includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image."

Appx159-160 (4:57-5:19). In that case, there is no point in performing

the transition because the resolution would be worse. *See* Appx162 (10:5-

36).

Independent claims 1 and 4 of the '898 patent are representative:

1.    A zoom digital camera comprising:

    a) a Wide imaging section that includes a fixed focal length Wide
lens with a Wide field of view (FOV) and a Wide sensor, the
Wide imaging section operative to provide Wide image data of
an object or scene;

    b) a Tele imaging section that includes a fixed focal length Tele
lens with a Tele FOV that is narrower than the Wide FOV and
a Tele sensor, the Tele imaging section operative to provide
Tele image data of the object or scene; and

    c) a camera controller operatively coupled to the Wide and Tele
imaging sections and configured to evaluate if a no-switching
criterion is fulfilled or not fulfilled, wherein if the no-
switching criterion is fulfilled in a zoom-in operation between
a lower zoom factor (ZF) value and a higher ZF value at a zoom
factor (ZF) higher than an up-transfer ZF, the camera
controller is further configured to output a zoom video output
image that includes only Wide image data, and wherein if the
no-switching criterion is not fulfilled, the camera controller is

> further configured to output a zoom video output image that includes only transformed, digitally zoomed Tele image data.

Appx163 (12:23-45).

> 4. The camera of claim 1, wherein the no-switching criterion includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image.

Appx163 (12:54-56).

### Apple Files Two Inter Partes Review Petitions, And The Board Institutes Review On Both Of Them.

In its petitions for *inter partes* review, Apple challenged claims 1, 4, 8-12, 15, 19, and 20 of the '898 patent and claims 1-2, 5, 9-14, 17, and 21-22 of the '332 patent. *See* Appx1006; Appx10006. The 80-page petitions, alongside 185 pages of expert declaration from Dr. Durand, explained how the prior art of record renders every challenged claim obvious. *See* Appx1001-1088; Appx10001-10087; Appx5436-5544; Appx6276-6357; Appx15204-15311; Appx16043-16124.[2] Specifically, the petitions

---

[2] Dr. Fredo Durand is a tenured full professor in the Electrical Engineering and Computer Science Department of the Massachusetts Institute of Technology (MIT). *See, e.g.*, Appx5442. He has researched imaging systems, including optics, sensors, and digital processing for over 25 years. *Id.* Dr. Durand has authored and co-authored more than 200 publications related to imaging system technologies, including optics design, image processing, and computational photography.

proposed that Golan in view of Martin and further in view of Togo—alone or in combination with one of certain other references not at issue here—rendered every challenged claim obvious.[3]  Neither the petitions nor the patent owner's responses identified any claim terms requiring explicit construction, so the Board analyzed the claims consistent with their plain and ordinary meanings.  *See* Appx9; Appx1013; Appx10011.

As is relevant here, the petitions first summarized Golan, Martin, and Togo and provided several reasons why a POSITA would have been motivated to combine them.  *See* Appx1018-1038; Appx10008-10037.  The petitions specified that the Golan, Martin, and Togo "references are analogous prior art."  Appx1024; Appx1035.  The petitions then submitted that "Golan's expressed desire to achieve 'continuous electronic zoom with uninterrupted imaging, when switching back and forth between the first image sensor array and the second image sensor array' would have motivated a POSITA to incorporate Togo's teachings of a no-switching criterion based on a specific 'setting magnification X'

---

[3] U.S. Patent Application Publication No. 2012/0026366 ("Golan"); U.S. Patent No. 8,081,206 ("Martin"); U.S. Patent Application Publication No. 2012/0019704 ("Levey"); U.S. Patent Application Publication No. 2008/0030592 ("Border"); U.S. Patent No. 7,859,588 ("Parulski").

and 'photography distance Y' of an object to be imaged." Appx1037 (petition). And they further submitted that a POSITA would have been motivated "to incorporate Martin's teaching of critical alignment of an [Region of Interest] in two images having different points of view . . . to achieve a stable transition in the continuous zoom video output images of the digital camera of Golan." Appx1025.

The petitions next advanced that the prior art taught every limitation of the challenged claims. As Apple explained, "Golan teaches use of wide and tele lenses and employs wide and tele images during digital zooming." Appx1018-1019. Specifically, "Golan teaches that zoom control circuit 130 receives a required zoom from an operator of the image acquisition system, and selects the relevant image sensor (110 and 112)." Appx1020 (petition). Golan's controller 130 "select[s] Wide image sensor and provid[es] a zoom video output imaging only Wide image data when a requested zoom factor value is less than the predetermined switch zoom factor $ZF_T$, and select[s] Tele image sensor and provid[es] a zoom video output image including only Tele image data when the requested zoom factor value is greater than the up-transfer ZF (e.g., the predetermined switch zoom factor $ZF_T$." Appx1048 (petition).

Togo, like Golan, discloses a "controller (Image Control Means 4) operatively coupled to Wide and Tele imaging sections including wide and tele 'fixed magnification lens systems.'" Appx1049 (petition). As the petition explained, "Togo teaches that at a requested zoom factor (ZF) value, a camera controller is configured to evaluate if a no-switching criterion is fulfilled or not." Appx1048. Akin to Golan's controller, Togo's controller determines (based on the requested zoom factor) whether the output image should be "generated entirely from cutout images (digital zoom) of the wide-angle image," Appx1051 (emphasis omitted), or whether the output image should "include[] or switch[] to the telephoto image," Appx1053. In addition to considering the user-requested zoom factor, Togo's controller also evaluates image quality when determining which output image to generate. *See* Appx1050 (petition). The "image qualities of the enlarged image 22 of the wide-angle image 20 and the telephoto image 21 at the long distance (B) in Fig. 7 **are compared**." Appx1051 (original emphasis). Similarly, when the object is close to the camera, Togo's controller will not permit switching to the telephoto image because "Togo recognized that 'a telephoto imaging module with a long

focal length is less sharp at close distances compared to a wide-angle imaging module whose focal length is short.'" Appx1050 (petition).

The petition relied on Martin to meet only one element of the challenged claims. Representative claim 1 requires that the tele image data is "transformed," and the petition argued that Martin expressly teaches transforming image data. *See, e.g.*, Appx1056; *see also* Appx34 (citing Appx5587 (Martin (5:38-42))).[4] Martin teaches image transformation because its "critical alignment" process involves manipulating "unaligned image 32 (succeeding image in video) . . . until its same region of interest 34, albeit as viewed from a different point of view[,] matches alignment with region of interest 34 in reference image 30 (preceding image in video)." Appx1057-1058 (internal quotation marks omitted). The petitions explained that Martin provides that this "manipulation" may involve resizing the image, which is a type of image transformation. *See* Appx1058 (citing Appx5586 (Martin (4:55-59) ("The manipulation process may be represented by an affine transformation

---

[4] The challenged patents provide that Tele camera output is "transformed" when the Tele image is "resized to make its appearance as close as possible to the Wide image" to achieve a smoother transition. Appx161 (8:30-40).

including translation, rotation, scaling, and/or any other desired transformation.")))

After analyzing the petitions and the record evidence, the Board instituted review of all challenged claims based on the specific grounds raised in the petitions. *See* Appx1111-1154 (Institution Decision); Appx10111-10154 (same).

### *The Board Held All Challenged Claims Unpatentable For Obviousness.*

On December 7, 2021, the Board issued its final written decisions, invalidating all challenged claims. At the outset, the Board noted that it construed each challenged claim to have its ordinary and customary meaning because neither Apple nor Corephotonics requested claim construction. *See* Appx9-10. The Board next analyzed Apple's first ground of unpatentability, which is the only ground at issue in this appeal.

*Representative Claim 1.* The Board agreed with Apple's undisputed contention that Golan taught the preamble and the first two limitations of representative claim 1. *See* Appx16-17. Specifically, the Board found that Golan disclosed the recited digital camera with a fixed focal length Wide lens 122 with field of view 142, a Wide sensor 112, a

fixed focal length Tele lens 120 with a field of view 140, and a tele image sensor 110. *See id.*; *see also* Appx11 (Figure 1 of Golan).



Appx11 (Golan at Fig. 1).

On the final limitation of representative claim 1, the Board agreed with Apple that Golan disclosed a camera controller 130 and recognized that Apple relied on "the combination of Golan, Martin, and Togo to teach the *claimed configuration* of the camera controller." Appx18 (emphasis added). The Board found that Golan's camera controller 130 (like Togo's camera controller 4) facilitated switching from the Wide sensor to the Tele sensor during a zoom-in operation. *See* Appx18. And it appreciated that Togo's camera controller 4 inhibited this switching operation in some cases, such as when the quality of the image generated by the Tele sensor is worse than that of the Wide sensor. *See* Appx19.



Appx5688 (Togo at FIG. 1 (annotations added)). The Board acknowledged Togo's teachings that the camera would not switch from the Wide sensor to the Tele sensor if the subject is close to the camera because "a telephoto imaging module with a long focal length is less sharp at close distances compared to a wide-angle imaging module whose focal length is short." Appx19. But if the no-switching criterion is not met— that is, the subject is not close to the camera—the Board agreed that "a POSITA would have understood that in the combination . . . switching from Wide image to Tele image as taught in Golan is performed, and the zoom video output image includes only digitally-zoomed Tele image data." Appx20; *see* Appx26 (the Board determining that Apple's contentions are sufficiently supported).

25

As to the limitation requiring "transformed" digitally zoomed Tele image data, the Board agreed with Apple that Martin teaches using critical alignment when switching between two successive images having different points of view "to generate **a transformed succeeding image** in video output images for a stable video display." Appx20 (original emphasis). The Board pointed to Martin's teaching that "in critical alignment, the transformed succeeding image is used to achieve position matching of [a region of interest] between the preceding image and transformed succeeding image . . . when switching between the two images for providing stable video output images." Appx22. According to the Board, "Martin discloses that critical alignment 'corresponds to a condition where the degree of alignment is sufficient to achieve a stable auto stereoscopic display' and that '[s]tability of the whole image may not be required, as long as at least a particular region of interest in the auto stereoscopic display is stable.'" Appx29 (quoting Appx5587 (Martin) at 5:53-58). Accordingly, the Board concluded that the combination of Golan, Martin, and Togo taught each limitation of claim 1.

Next, the Board underscored two of the five motivations to combine Golan and Martin that Apple identified in its petitions. Specifically, the

Board found that "Martin addresses the[] needs identified in Golan by providing "critical alignment of an ROI [Region of Interest] in two images having different points of view . . . to achieve a stable transition in the continuous zoom video output images of the digital camera of Golan.'" Appx26-27. The Board found further that "the combined teachings of Golan and Martin would have produced operable results that are predictable" and that "applying Martin to the teachings of Golan would have required no more than combining known elements according to known methods (such as performing critical alignment of an ROI in Wide and Tele images for position matching when switching between Wide and Tele images in zoom control subsystem of Golan) to achieve the benefits of a stable transition in video output images described by Martin." Appx27 (internal quotation marks omitted).

The Board likewise agreed with Apple's proposed motivations to combine Togo with the Golan-Martin pair presented in Apple's petitions. The Board explained that it was "persuaded by Petitioner's contentions that Golan's expressed desire to achieve continuous electronic zoom with uninterrupted imaging, when switching back and forth between the first image sensor array and the second image sensor array would have

motivated a person of ordinary skill in the art to incorporate Togo's teachings of a no-switching criterion based on a specific 'setting magnification X' and a 'photography distance Y' of an object to be imaged." Appx41.

The Board next considered, but rejected, each of Corephotonics's arguments. First, the Board disagreed with Corephotonics's argument that Golan and Martin are fundamentally dissimilar. To the contrary, the Board found that "Golan and Martin both involve parallax effects caused by two cameras with different fields of view and they both address a common problem—a discontinuity in images that are misaligned due to parallax from two different cameras—albeit in different contexts and with different techniques." Appx33 (internal quotation marks omitted). In the Board's view, "Golan and Martin are not incompatible with each other for having different objectives." *Id.*

Second, the Board disagreed with Corephotonics's argument that Martin taught away from the claimed inventions. The Board explained that "Martin's teaching[s] of critical alignment does not appear to be divergent from or incompatible with the scope of independent claim 1 or the objectives of the [challenged patents]." Appx34.

Finally, the Board adopted Apple's argument that Golan and Martin were analogous prior art over Corephotonics's opposition. The Board found that Golan was in the same field of endeavor as the claimed invention, and Martin was pertinent to the problem addressed in the challenged patents. *See* Appx40. Although the Board perceived that the petition improperly compared Golan and Martin to each other instead of to the claimed invention, *see* Appx39, that perception was apparently based on Corephotonics's framing of Apple's analogousness argument— that is, that "Golan and Martin were 'analogous' *because* they are both in 'the same field of endeavor,'" Appx1308 (sur-reply) (emphasis added). But actually, the petitions argued that "the references are analogous prior art *and* are in the same field of endeavor." Appx1024 (emphasis added). In other words, the petitions provided that Golan and Martin were analogous to the claimed invention *and* they were analogous to each other.

Regardless, the Board found that Apple rectified any confusion in its reply. *See* Appx39. Ultimately, the Board was persuaded by the entirety of the record that Golan and Martin were analogous prior art because "Golan is in the same field of endeavor as the claimed invention"

and "Martin is reasonably pertinent to the problem faced by the inventor." Appx40.

***Representative Claim 4.*** The Board found that the combination of Golan, Martin, and Togo taught a "no-switching criterion [that] includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image," as recited in representative claim 4. Appx55-57; *see* Appx163 (12:54-56); Appx164 (14:9-11); Appx178 (12:65-67); Appx179 (14:11-13).

In reaching its decision, the Board first rejected Corephotonics's request to implicitly construe "effective resolution" as "effective resolution score." Appx55-56. The Board reasoned that because lexicography and disclaimer were absent, there was "no indication that the patentee intended to limit [effective resolution to calculating an effective resolution score] or [to] redefine effective resolution to be something that can only be determined by an effective resolution score." Appx56. The Board then construed "effective resolution" to mean "image quality including but not limited to blurriness and sharpness." Appx57.

Based on its construction of "effective resolution," the prior art references themselves, and Dr. Durand's expert testimony, the Board

agreed with Apple that "[a] POSITA would have understood that the image quality no-switching criterion as taught in Togo includes 'an effective resolution of the Tele image being lower than an effective resolution of the Wide image.'" *See* Appx57; Appx1061 (Petition (citing Appx5511 (Durand decl.) ¶ 135 and Appx5679-5687 (Togo))).

Corephotonics appealed the Board's final written decisions to this Court. *See* Appx1457-1535, Appx10464-10543.

## SUMMARY OF THE ARGUMENT

The Board correctly decided that the challenged claims of the '898 and '332 patents were obvious over grounds including the base combination of Golan, Martin, and Togo. Substantial evidence—e.g., the prior art, the testimony of Dr. Durand, and the statements of counsel at the oral hearing—supports the Board's decisions. The Board explained the legal and factual bases for its decisions, providing a clear path to affirmance.

On appeal, Corephotonics scarcely disputes the merits of the Board's obviousness findings. Indeed, it does not even bother disputing the Board's finding that the prior art teaches every limitation of the independent claims. Instead, Corephotonics lodges procedural

complaints about the Board's acceptance of Apple's analogous art arguments regarding Golan and Martin.  *See* Op. Br. 3-5.   But Corephotonics's grievances are unjustified.   Corephotonics received plenty of notice that Golan and Martin were being asserted as analogous art in addition to the bases for that assertion.   Further, the Board gave Corephotonics several meaningful opportunities to respond to Apple's analogousness arguments.

Corephotonics next argues that substantial evidence does not support the Board's analogousness findings.   Corephotonics is wrong. The Board relied on the entire record to find that Golan and Martin were analogous art.   For example, the Board credited Dr. Durand's testimony that the challenged patents and Golan all concern the field of zoom digital cameras.   *See* Appx6296 ¶ 32; *compare* Appx158 ('898 patent (1:17-19)) *and* Appx173 ('332 patent (1:17-19)) *with* Appx5575 (Golan at ¶ 2).   And Golan and the challenged patents endeavor to configure those cameras "to provide a continuous, smooth zoom in video mode."   Appx159 ('898 patent (3:10-17)); Appx174 ('332 patent (3:10-17)); *see* Appx5567 (Golan at Abstract) ("A method for continuous electronic zoom . . . .").

Similarly, the Board's determination that Martin was reasonably pertinent to the "jump effect" problem facing the inventors has substantial evidentiary support. The disclosures of the challenged patents themselves teach "minimiz[ing] the jump effect" in the region of interest when switching between cameras or points of view. *See* Appx161 (7:42-56). This minimization "may include matching the position . . . of the output image before and after the transition." *Id.* And just like the challenged patents, Martin discloses using position matching to stabilize a display in a region of interest. *See* Appx5586 (Martin at 4:32-59).

On the dependent claims, Corephotonics's challenge is limited to one limitation: "wherein the no-switching criterion includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image." Op. Br. 5-6. In essence, Corephotonics's argument is simply a late-stage, last-ditch effort to narrowly construe "effective resolution" to overcome the Togo prior art reference. When construing "effective resolution," the Board correctly declined to read the specification into the claims because it discerned no lexicography or disclaimer from the prosecution history. *See* Appx55-56. And substantial evidence supports the Board's determination that Togo teaches the

disputed limitation, as recited. Corephotonics has not demonstrated otherwise.

## STANDARD OF REVIEW

"The Board's determination that a prior art reference is analogous art [ ] presents an issue of fact, reviewed for substantial evidence." *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1378 (Fed. Cir. 2007); *Donner Tech., LLC v. Pro Stage Gear, LLC*, 979 F.3d 1353, 1359 (Fed. Cir. 2020). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *HTC Corp. v. Cellular Commc'ns Equip., LLC*, 877 F.3d 1361, 1367 (Fed. Cir. 2017) (citation and quotation marks omitted).

This Court reviews Board decisions "for compliance with the Administrative Procedure Act ('APA') de novo." *TRUSTID, Inc. v. Next Caller, Inc.*, No. 2020-1950, 2021 WL 4427918, at *2 (Fed. Cir. Sept. 27, 2021). "[T]he introduction of new evidence in the course of the trial is to be expected in *inter partes* review trial proceedings and, as long as the opposing party is given notice of the evidence and an opportunity to respond to it, the introduction of such evidence is perfectly permissible under the APA." *Genzyme Therapeutic Prods. L.P. v. Biomarin Pharm.*

*Inc.*, 825 F.3d 1360, 1366 (Fed. Cir. 2016). "Under the APA, the Board's actions are not set aside unless 'arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law.'" *Nike, Inc. v. Adidas AG*, No. 2021-1903, 2022 WL 4002668, at *4 (Fed. Cir. Sept. 1, 2022) (nonprecedential).

"Claim construction is ultimately a question of law that may be based on underlying factual findings." *Kamstrup A/S v. Axioma Metering UAB*, 43 F.4th 1374, 1381 (Fed. Cir. 2022) (*citing Teva Pharms. U.S.A., Inc. v. Sandoz, Inc.*, 574 U.S. 318, 332-33 (2015)). This Court "review[s] the Board's claim constructions de novo and review[s] any underlying factual determinations for substantial evidence." *Id.* In construing claims, this Court does not "read limitations from the embodiments in the specification into the claims" and "depart[s] from the plain and ordinary meaning of claim terms based on the specification in only two instances: lexicography and disavowal." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).

"Obviousness is a question of law based on underlying factual findings." *In re Smith Int'l, Inc.*, 871 F.3d 1375, 1381 (Fed. Cir. 2017). This Court "review[s] the PTAB's underlying factual findings, including

what a reference teaches and the differences between the prior art and the claimed invention, for substantial evidence." *Allied Erecting & Dismantling Co. v. Genesis Attachments, LLC*, 825 F.3d 1373, 1380 (Fed. Cir. 2016).

## ARGUMENT

## I.    The Board Properly Deemed Golan And Martin Analogous Prior Art.

The Board agreed with Apple (and Apple's expert) that a POSITA would have been motivated to combine Golan and Martin. Appx26-40. In reaching that decision, the Board also agreed with Apple that both references were analogous prior art. Appx40. *See In re Kahn*, 441 F.3d 977, 987 (Fed. Cir. 2006) (the analogousness determination "begins the inquiry into whether a skilled artisan would have been motivated to combine references by defining the prior art relevant for the obviousness determination"); *In re Ethicon, Inc.*, 844 F.3d 1344, 1349 (Fed. Cir. 2017) ("a skilled artisan would only have been motivated to combine analogous art").

"Analogous art is that which is relevant to a consideration of obviousness under section 103." *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1351 (Fed. Cir. 2010). "Two separate tests define the scope of

analogous prior art: (1) whether the art is from the same field of endeavor, regardless of the problem addressed and, (2) if the reference is not within the field of the inventor's endeavor, whether the reference still is reasonably pertinent to the particular problem with which the inventor is involved." *In re Bigio*, 381 F.3d 1320, 1325 (Fed. Cir. 2004).

## A.    The Board did not err in accepting Apple's timely analogousness arguments.

The Board found that Golan and Martin were analogous to the challenged patents because Golan satisfied the first test, and Martin satisfied the second.  According to the Board, "Golan is in the same field of endeavor as the claimed invention because Golan describes performing digital zoom using a wide image sensor array and lens and a tele image sensor array and lens with the goal of providing 'continuous electronic zoom with uninterrupted imaging,'" and "Martin is reasonably pertinent to the problem faced by the inventor: reducing an image jump effect seen in video output images when switching between cameras that have different fields of view." Appx40.

Corephotonics's position that the Board violated the APA in making these findings lacks merit.  As an initial matter, no legal or regulatory authority compels Apple, or any other IPR petitioner, to establish

analogousness for every asserted prior art reference in its *prima facie* obviousness case. Moreover, Corephotonics had ample notice of Apple's argument that Golan and Martin were analogous art and an opportunity to respond at meaningful points throughout the proceedings, including in the preliminary patent owner response, the patent owner response, the sur-reply, and at the oral hearing. *See Genzyme*, 825 F.3d at 1367.

### 1. Apple's prima facie obviousness case did not require detailed reasons why each prior art reference was analogous art.

Corephotonics's entire APA argument is built on a false premise. Corephotonics contends that "Apple bore the *prima facie* burden to prove its asserted references qualified as analogous art under § 103 in its petitions." Op. Br. 43. Corephotonics provides no support—legal, regulatory, or otherwise—for this heightened petition requirement.

As a threshold matter, Corephotonics's contention is unappealable because it "seems to be a back-door attempt to challenge whether the Board properly instituted review based on whether the petition contained a prima facie case of obviousness." *See Valmont Indus. v. Lindsay Corp.*, 730 F. App'x 918, 923 (Fed. Cir. 2018) (discussing *Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 275-76 (2016)). Corephotonics's claim that

Apple's petition insufficiently pleaded analogousness "is little more than a challenge to the Patent Office's conclusion, under § 314(a), that the information presented in the petition warranted review." *Cuozzo*, 579 U.S. at 276 (internal quotation marks omitted). And the Supreme Court has held that 35 U.S.C. § 314(d) bars judicial review of such challenges. *See id.* at 275-76 ("where a patent holder merely challenges the Patent Office's determination that the information presented in the petition . . . shows that there is a reasonable likelihood of success with respect to at least [one] of the claims challenged" (internal quotation marks omitted)).

In addition, Corephotonics's position contradicts 35 U.S.C. § 312, which dictates the statutory requirements for a petition for *inter partes* review. In relevant part, § 312 compels petitioners to "identif[y], in writing and with particularity, each claim challenged, the grounds on which the challenge to each claim is based, and the evidence that supports the grounds for the challenge to each claim." *See* 35 U.S.C. § 312(a)(3). With respect to grounds based on obviousness, "[t]he petitioner must [ ] articulate specific reasoning, based on evidence of record, to support the legal conclusion of obviousness." *Palo Alto*

39

*Networks, Inc. v. Finjan, Inc.*, 777 F. App'x 501, 506 (Fed. Cir. 2019). And the legal conclusion of obviousness requires "the scope and content of the prior art [ ] to be determined; differences between the prior art and the claims at issue [ ] to be ascertained; and the level of ordinary skill in the pertinent art resolved." *Unwired Planet, LLC v. Google Inc.*, 841 F.3d 995, 1000 (Fed. Cir. 2016) (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007)). Additionally, "it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *KSR*, 550 U.S. at 418. None of this authority requires affirmatively establishing that a reference is analogous prior art in the petition.

Corephotonics's view also clashes with several Board decisions holding that petitioners are not obligated to establish analogousness in the petition. For example, in *Apple Inc. v. Qualcomm Inc.*, IPR2018-01245, Paper 39, 2020 WL 253090, at *7 (P.T.A.B. Jan. 15, 2020), the Board reasonably determined that petitioners are not required to "affirmatively predict and preempt all arguments against a reference's status as 'prior art,' including whether it is analogous." *Id.* The Board thus concluded that it could properly "resolve the issue of analogous art

in view of the entire record," and base its analogous art findings on arguments made in a petitioner's reply. *See id.* at \*7-8; *see also, Parrot S.A. v. Drone Techs., Inc.*, IPR2014-00730, Paper 27, 2015 WL 6180964, at \*12 (P.T.A.B. Oct. 20, 2015) ("When the analogous-art issue was raised by Patent Owner in its Patent Owner Response, it was incumbent upon Petitioner to demonstrate that [the prior art reference] is analogous art.").

Not even the cases that Corephotonics itself cites support its heightened petition requirement. Corephotonics relies on *Intelligent Bio-Systems, Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1369 (Fed. Cir. 2016), for the unremarkable proposition that IPR petitioners must comply with 35 U.S.C. § 312. *See* Op. Br. 34. There, the petition advanced one motivation to combine as part of the *prima facie* obviousness case, but when the patent owner credibly disputed that motivation in its patent owner response, the petitioner abandoned its original motivation and provided a brand-new motivation on reply, which was not permitted. *Intelligent Bio-Sys.*, 821 F.3d at 1369. That case offers no directives or discussion suggesting that the petition must

establish analogousness, which is extrinsic to a showing of *prima facie* obviousness. *See KSR*, 550 U.S. at 406, 418.

Additionally, Corephotonics relies on *Wasica Finance GMBH, etc. v. Continental Automotive Systems*, 853 F.3d 1272, 1286 (Fed. Cir. 2017), to argue that Apple improperly "shift[ed] arguments" during the IPR proceeding. Op. Br. 35. But *Wasica* concerned a petitioner who primarily advanced an anticipation ground and simply declared that "to the extent that any of the variances in claim scope are not necessarily shown in the [ ] anticipation analysis, such variances would have been obvious to a person of ordinary skill in the art." *See Wasica*, 853 F.3d at 1286. When its anticipation ground faltered, however, the petitioner tried to make its *prima facie* obviousness case on reply. *See id.* The Board rejected the petitioner's attempt, and this Court saw no error in that decision. *See id.* Like *Intelligent Bio-Systems*, *Wasica* does not say that analogousness must be proved in a petitioner's *prima facie* obviousness case. *See KSR*, 550 U.S. at 406, 418.

Moreover, while the inaccuracy of Corephotonics's heightened petition requirement is a sufficient basis on which to dismiss its APA challenge, it is not a necessary one. That is, even if such a heightened

requirement had existed, the APA still would not have been violated because Corephotonics received "ample notice and opportunity to respond." *See Infineum USA L.P. v. Chevron Oronite Co. LLC*, No. 2020-1333, 2022 WL 3147683, *5 (Fed. Cir. Aug. 8, 2022) (nonprecedential).

### 2. Corephotonics received early notice, and subsequently acknowledged, that Golan is analogous art to the claimed invention.

The record belies Corephotonics's criticism of the Board's analogousness findings with respect to Golan. Corephotonics had early, ample notice that Apple and the Board considered Golan analogous art, as well as several opportunities to dispute that position throughout the proceedings. But instead of objecting, Corephotonics agreed.

Apple notified Corephotonics in its petitions that Golan was analogous art. Appx1024 ("the references are analogous prior art"). The petitions provided that the challenged patents were directed to a "zoom digital camera" with "processing applied to eliminate the changes in the image during crossover from one camera to the other." Appx1008. And they explained that "Golan . . . facilitates continuous electronic zoom with uninterrupted imaging, when switching back and forth between the first image sensor array and the second image sensor array." Appx1024-

43

1025.  In addition, the petitions noted that the applicants cited Golan in their information disclosure statement ("IDS").  *See* Appx1015.  But even without these explicit statements, the petitions still implicitly informed Corephotonics that Golan and Martin were analogous art simply by asserting them, because non-analogous art is inapplicable under 35 U.S.C. § 103.  *See In re Klein*, 647 F.3d 1343, 1348 (Fed. Cir. 2011) ("A reference qualifies as prior art for an obviousness determination under § 103 only when it is analogous to the claimed invention.").

Upon instituting *inter partes* review, the Board notified Corephotonics that, like the claimed invention, "Golan concerns 'a method for continuous electronic zoom in a computerized image acquisition system.'"  Appx1121 (Institution Decision).  The Board further communicated its agreement with Apple that the challenged patents also "describe[] video mode zoom operation . . . with processing applied to eliminate the changes in the image during crossover from one camera to the other."  *See* Appx1113 ('898 Institution Decision) (internal citation and quotation marks omitted).  Moreover, nothing in Corephotonics's patent owner response even suggested that Golan was non-analogous art.  Instead, Corephotonics focused on rebutting the

44

merits of Apple's *prima facie* case of obviousness.  *See*, *e.g.*, Appx1198-1199.

On sur-reply, Corephotonics even acknowledged that Golan and the challenged patents "are directed toward achieving a smooth, continuous zoom." Appx1309 (Sur-Reply) (citing Golan ¶2 and Appx159 ('898 patent) at 3:16-17); *see also id.* (Patentee acknowledging that "the [challenged patent] is certainly concerned with [achieving 'a continuous, smooth zoom in video mode']"); Appx1395 (Oral Hearing at 1-3) ("So Golan is continuous, electronic zoom for an imaging system with multiple imaging devices having different fixed field of view cameras.  That's Golan"). Thus, it was undisputed below—and there is no real dispute here on appeal—that Golan is analogous art to the claimed invention.

### 3. The Board properly considered the entire record to determine that Golan and Martin were analogous art and gave Corephotonics several opportunities to respond.

The Board sensibly permitted Apple to reinforce its analogousness position on reply.  The parties agree that Apple's petition asserted that Golan and Martin were analogous art.  Op. Br. 22 ("In its petitions, Apple argued that Golan and Martin were 'analogous prior art' under § 103 . . . .").  And there is no dispute that Apple provided detailed

reasons why Golan and Martin were analogous art in its reply brief. Appx39. Thus, the only remaining issue for this Court to resolve is whether the Board was free to rely on the evidence and argument that Apple provided in its reply to support its position that Golan and Martin were analogous art.

As the Board explained, Apple's reply was proper rebuttal to arguments raised in the patent owner response. *See* Appx39 n.20 ("Petitioner properly replied to Patent Owner's criticism of its showing regarding analogous art."); *Ariosa Diagnostics v. Verinata Health, Inc.*, 805 F.3d 1359, 1368 (Fed. Cir. 2015) ("The Board must make judgments about whether a Petition identified the specific evidence relied on in a Reply and when a Reply contention crosses the line from the responsive to the new."). The Board noted that under *Dynamic Drinkware, LLC v. Nat'l Graphics, Inc.*, 800 F.3d 1375, 1379 (Fed. Cir. 2015), "[t]he burden of production may entail 'producing additional evidence and presenting persuasive argument based on new evidence or evidence already of record.'" Appx39 n.20.

Indeed, consistent with 37 C.F.R. § 42.23(b), the reply listed specific reasons why Golan and Martin were analogous prior art only to directly

46

rebut Corephotonics's argument that "[t]he Petition errs in stating that both Golan and Martin are analogous prior art." Appx1198 (PO Response) (internal quotation marks omitted). The reply relied on portions of the petition to demonstrate that "Golan and Martin are analogous art to the [challenged patents] because they meet both standards—'the same field of endeavor' and 'reasonably pertinent to the particular problem with which the inventor was concerned.'" Appx1264 (Reply) (citing Petition 18-19). Apple also offered expert testimony from Dr. Durand that Golan and Martin were "pertinent to the problem addressed in the [challenged patents], namely, achieving 'a continuous, smooth zoom in video mode." *Id.*; *see* Appx6296 (Durand Decl. in support of Reply*); see also Anacor Pharms., Inc. v. Iancu*, 889 F.3d 1372, 1380 (Fed. Cir. 2018) ("[T]he petitioner in an inter partes review proceeding may introduce new evidence after the petition stage if the evidence is a legitimate reply to evidence introduced by the patent owner.").

Several PTAB cases validate the Board's decision to consider Apple's analogous arguments and evidence on reply. For example, the Board relied on *Apple Inc. v. Qualcomm Inc.*, IPR2018-01245, Paper 39, 2020 WL 253090, at *7 (P.T.A.B. Jan. 15, 2020). Appx39 n.20. There,

the Board disagreed with the patent owner's argument that petitioners were obligated to establish analogousness in the petition. *Apple*, 2020 WL 253090, at *7. The Board reasonably determined that petitioners are not required to "affirmatively predict and preempt all arguments against a reference's status as 'prior art,' including whether it is analogous." *Id.* The Board thus concluded that it could properly "resolve the issue of analogous art in view of the entire record," and base its analogous art findings on arguments made in a petitioner's reply. *See id.* at *7-8. The Board also relied on *Parrot S.A. v. Drone Techs., Inc.*, IPR2014-00730, Paper 27, 2015 WL 6180964, at *12 (P.T.A.B. Oct. 20, 2015), for the proposition that only "[w]hen the analogous-art issue was raised by Patent Owner in its Patent Owner Response, it was incumbent upon Petitioner to demonstrate that [the prior art reference] is analogous art."

Corephotonics relies on *Wasica* to argue that Board should have ignored Apple's rebuttal argument and evidence. Op. Br. 35. But *Wasica* offers no help. As discussed above, *supra* at 42, *Wasica* concerned a petitioner who failed to make any *prima facie* obviousness case in the petition. *See Wasica*, 853 F.3d at 1286. There, the petition lacked certain information required under § 312, such as an obviousness ground and

48

evidence supporting the obviousness ground. *See id.* On reply, the petitioner there impermissibly "shift[ed] arguments" by attempting make its *prima facie* obviousness case by adding the omitted information and "effectively abandoned its petition in favor of a new argument." *Id.* That is not what happened here. Apple's reply did not abandon or shift any arguments, but instead "explain[ed] how its original petition was correct" that Golan and Martin were analogous art. *See id.*

The Board fully complied with *Wasica*. And Corephotonics is wrong that Apple "shifted arguments" by contending in its petitions that Golan and Martin were analogous to each other but in its reply contending that Golan and Martin were analogous to the claimed inventions. *See supra* at 29 (explaining that the petitions argued that Golan and Martin were analogous to the claimed inventions *and* analogous to each other). But regardless of whether Apple's rebuttal is treated as a clarification (as Apple argues) or as a correction (as Corephotonics argues), the Board committed no APA violation. Corephotonics received all the process it was due.

Specifically, Apple maintained all its original theories,[5] Apple notified Corephotonics of its analogousness evidence, and the Board gave Corephotonics several opportunities to respond. *See Infineum*, 2022 WL 3147683, at *3 ("where there is no change of theory . . . the introduction of new evidence in the course of the trial is to be expected in *inter partes* review trial proceedings and, as long as the opposing party is given notice of the evidence and an opportunity to respond to it, the introduction of such evidence is perfectly permissible"). For example, the Board gave Corephotonics a second deposition of Dr. Durand after he submitted his reply declaration, and it permitted Corephotonics to file a sur-reply. *See id.* at *5 (finding no APA violation because the Board granted patent owner a second deposition and sur-reply).

Corephotonics took advantage of these opportunities to respond. On sur-reply, Corephotonics argued that "nowhere does Martin contain any teaching about continuous zoom . . . . Martin is about 'critical

---

[5] This Court often uses the terms "ground" and "theory" interchangeably. *See e.g., Genzyme*, 825 F.3d at 1366 (concluding that the Board did not "change theories in midstream" because its final written decisions were based on the same grounds of unpatentability set forth in its institution decisions); *Infineum*, 2022 WL 3147683, at *4 (same).

alignment corresponds to a condition where the degree of alignment is sufficient to achieve a stable autostereoscopic display.'" Appx1311 (Sur-reply) (emphasis omitted); *see also* Appx1309-1310 ("Apple is wrong in its characterization that Martin is pertinent to obtaining a continuous, smooth zoom in video mode and wrong in in [sic] its characterization that Martin in analogous art"). Similarly, at the oral hearing, Corephotonics argued that the claims at issue are concerned with "reducing parallax in real-time during a zoom-in operation." *See* Appx1399 (Oral Hearing Transcript at 48:13-16). And, according to Corephotonics, "[Martin] is aimed at a different problem of providing parallax images for an autostereoscopic effect . . . it's not reducing parallax." Appx1403 (Oral Hearing Transcript at 52:11-24).

Thus, Corephotonics's argument that it "never had an adequate (or any) opportunity to counter" Apple's analogous art arguments, *see* Op. Br. 38, is baseless. And contrary to Corephotonics's grievance that it did not have a chance to submit new expert evidence, *see id.*, it did. Submitting new evidence on sur-reply may not be a matter of right, but Corephotonics was quite free to move the Board for such relief in light of Dr. Durand's reply declaration. *See* 37 C.F.R. §§ 42.22, 42.23(b), 42.5(b);

*Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1081 (Fed. Cir. 2015) ("[I]f the petitioner submits a new expert declaration with its Reply, the patent owner can respond in multiple ways."). In fact, Corephotonics knew it could submit sur-reply evidence because it actually did submit new evidence on sur-reply. *See* Appx6935-7295 (Sur-reply Exhibits 2017 and 2018, allegedly disclosing new evidence related to secondary considerations).

In sum, the Board was well within its right to consider the entire record to resolve the parties' analogous art dispute.

## B. The Board's analogousness determinations are supported by substantial evidence.

The Board correctly found that Golan and Martin were analogous art to the claimed invention. As the Board explained, "Golan is in the same field of endeavor as the claimed invention because Golan describes performing digital zoom using a wide image sensor array and lens and a tele image sensor array and lens with the goal of providing 'continuous electronic zoom with uninterrupted imaging,'" and "Martin is reasonably pertinent to the problem faced by the inventor: reducing an image jump effect seen in video output images when switching between cameras that have different fields of view." Appx40; *see infra* at 57-58 n.6.

52

The Board's analogousness findings were reasonably drawn from the record evidence, and thus, are supported by substantial evidence. *Wasica*, 853 F.3d at 1285 ("Because the Board's findings are reasonable on this record, they are supported by substantial evidence."). They were grounded in the prior art disclosures of Golan and Martin and the testimony of Dr. Durand. Corephotonics's mere disagreement with the Board's choice to credit Apple's arguments and evidence is no basis to upend the Board's well-reasoned decision.

1.    **Substantial evidence supports the Board's factual finding that Golan is in the same field of endeavor as the claimed invention.**

As discussed above, there is no legitimate dispute over whether substantial evidence supports the Board's finding that Golan is analogous art. *See supra* at 45. The Board accurately found that Golan, like the claimed invention, "describes performing digital zoom using a wide image sensor array and lens and a tele image sensor array and lens with the goal of providing 'continuous electronic zoom with uninterrupted imaging.'" Appx40.

As Corephotonics acknowledged in its sur-reply, Golan and the challenged patents are "directed toward achieving a smooth, continuous

zoom." Appx1309 (Sur-reply). Corephotonics further acknowledged that the challenged patents were "certainly concerned" with "the problem of achieving 'a continuous, smooth zoom in video made.'" *Id.* Likewise, in its patent owner response, Corephotonics explained that the challenged patents covered "technology that transitions between wide-angle ('Wide') images and telephoto ('Tele') images while taking video" and that "the ΔZoom term can be set to different values depending on whether the 'continuous and smooth zoom experience' is a 'zoom-in' (increasing ZF) or a 'zoom-out' (decreasing ZF)". Appx1177 (PO Response); *see also* Appx1184 (acknowledging that Golan "claimed to 'facilitate continuous electronic zoom with uninterrupted imaging'").

Corephotonics's sole substantive argument is that Golan and the challenged patents are not in the same field of endeavor because Golan provides "uninterrupted imaging when transitioning between Tele and Wide images" and the claimed invention is "specifically designed to interrupt . . . if a no-switching criterion is fulfilled and not transition between the images." Op. Br. 48. This argument makes no sense. The "uninterrupted imaging" benefit that Golan discloses pertains to switching. *See* Appx5575 (Golan) ¶ 15 ("facilitates continuous electronic

zoom with uninterrupted imaging, *when switching* back and forth between the first image sensor array and the second image sensor array" (emphasis added)); Appx1309; Op. Br. 9-10 (when a no-switching criterion is met, "switching will not be performed . . . 'smooth transition' in that case, 'is possible but undesirable'"); *id.* at 10 ("switching will not be performed if a no-switching criteria is fulfilled" (internal quotation marks omitted)). Thus, Corephotonics's attempt to distinguish Golan by focusing on unrelated situations in which no switching occurs should fail.

Substantial evidence supports the Board's conclusion that Golan and the claimed inventions all teach uninterrupted imaging when switching between Wide and Tele images. The Board relied on a portion of Golan's specification that disclosed that "[t]he calibration of the alignment, between the first image sensor array and the second image sensor array, facilitates continuous electronic zoom with uninterrupted imaging, when switching back and forth between the first image sensor array and the second image sensor array." Appx40 (citing Appx5575 (Golan) ¶ 15); *see* Appx5462 (Durand Decl. ¶ 50, '898 patent); Appx15228 (Durand Decl. ¶ 46, '332 patent). And the Board adopted Corephotonics's position that the claimed inventions were "directed toward achieving a

smooth, continuous zoom." *See* Appx1309 (Sur-reply (citing Appx159 ('898 patent, 3:16-17))). The challenged patents disclose that "[a] 'smooth transition' . . . between cameras or POVs [ ] minimizes the jump effect." Appx161 ('898 patent, 7:40-48). Similarly, Dr. Durand testified that the challenged patents describe "a dual-aperture digital camera including a Wide camera and a Tele camera" that includes a "video mode zoom operation . . . with processing applied to eliminate the changes in the image during crossover from one camera to the other." Appx5449-5450 (Durand Decl. ¶ 26 (internal quotation marks omitted)).

Corephotonics's gripe that the Board did not cite to the challenged patents when explaining that the challenged patents and Golan were in the same field of endeavor misses the mark. Op. Br. 47. It insists, without authority, that "[t]he Board had to provide at least some discussion of how (and citations to) the challenged patents in relevant part to discuss why they too were in the same field." *Id.* But the Board did more than enough to satisfy its obligations. The Board set forth the correct legal standard for analogousness. Appx39 (FWD) ("Art is analogous when it is: (1) from the same field of endeavor as the claimed invention; and (2) if the art is not from the same field of endeavor,

reasonably pertinent to the particular problem faced by the inventor.").
It explained that comparing Golan and Martin with each other instead of
with the claimed invention is an improper comparison for analogousness
purposes. *Id.* And critically, there was never any dispute about which
field of endeavor the challenged patents were in. Corephotonics may
have challenged Martin's analogousness, but it never once argued that
Golan and the challenged patents were in different fields of endeavor.
*See, e.g.*, Appx1308-1310. That is an argument fresh on appeal that
Corephotonics forfeited long ago.

> ### 2. Substantial evidence supports the Board's factual finding that Martin is reasonably pertinent to the same problem faced by the inventors of the claimed invention.

The Board's conclusion that Martin is analogous art because it is
pertinent to the problem addressed by the challenged patents—i.e.,
"reducing an image jump effect seen in video output images when
switching between cameras that have different fields of view"—is
supported by substantial evidence. Appx40.[6]

---

[6] Read in the proper context, the Board clearly intended to refer to the
term "points of view" rather than "fields of view" in describing Martin's
pertinence to a problem facing the inventors of the challenged patents.

To begin with, Corephotonics cannot credibly challenge the Board's finding that the problem facing the inventors was "reducing an image jump effect seen in video output images when switching between cameras" because Corephotonics itself proposed that notion.   In its preliminary patent owner response, Corephotonics told the Board that "parallax causes a 'jump' (discontinuous) image change when 'a dual-aperture camera switches the camera output between cameras or points of view.'"  Appx1102 (PPO Response).  And "the [challenged patents are] directed to an invention that seeks to reduce or remove parallax effects."  Appx1100 (PPO Response).  According to Corephotonics, the challenged patents "recognize that it is desirable to 'remove parallax artifacts' in a

---

Martin and the challenged patents are concerned with minimizing the jump effect that occurs when switching between cameras having different *points of view*.  *See, e.g.*, Appx5586 (Martin (3:32-41) ("[T]he present invention includes a method for creating autostereoscopic display by manipulating parallax images," which "include two or more images with overlapping visual fields but different *points of view*.") (emphasis added)); Appx161 ('898 patent (7:42-44) ("When a dual-aperture camera switches the camera output between cameras or *points of view*, a user will normally see a 'jump' (discontinuous) image change.") (emphasis added)); Appx5463 (Durand Decl. ¶ 51); Appx1024 (Petition).   The Board's typographical error was harmless.

digital zoom camera" because "parallax makes it more difficult to switch between different cameras." Appx1101 (PPO Response).

Now, on appeal, Corephotonics conveniently invites this Court to consider a new and improved problem facing the inventors: "the problem the inventors were trying to solve with the claimed invention was when *not* to transition between Wide and Tele images." Op. Br. 49. Corephotonics is wrong. For context, the challenged patents provide a zoom digital camera that is configured to "not use any fusion to provide a continuous, smooth zoom in video mode." *See* Appx159 (3:10-22). "In video mode, optical zoom is achieved 'without fusion' by, in some embodiments, switching between the [Wide] and [Tele] images." *Id.* at 3:38-40. But switching between Wide and Tele images introduces the problem of unwanted image jumps, which the challenged patents attempted to solve. Appx161 (7:42-44, 63-66).

While the challenged patents also discuss certain known situations in which switching between cameras or points of view is undesirable, *see* Appx162 (9:62–10:36), they do not identify *determining when* to prevent switching as a problem that the inventors were trying to solve, as Corephotonics now argues. The patents simply list the specific scenarios

that are unsuitable for switching without any discussion of how those scenarios were determined. *See id.* (10:6-36) (listing situations in which switching is prevented). For example, if the resolution of the Tele image is lower than that of the Wide image, "there is no point in performing the transition because no value (i.e., resolution) is gained. *Id.* (10:15-18). In such cases when no switching occurs, zooming is achieved with digitally zoomed Wide image data instead of with transformed, digitally zoomed Tele image data. *See id.* (9:60-67). Thus, while determining when to forgo switching between Wide and Tele cameras may be relevant to the claimed invention, it is only tangentially related to the core problem of reducing image jumps.

Even if determining when not to transition between Wide and Tele images were an additional problem that the inventors were trying to solve with the claimed invention, that would not merit disturbing the Board's sound decision. "[A] reference need only be reasonably pertinent to 'one or more of the particular problems to which the inventions relate,' not to each and every problem facing the inventors." *CyWee Grp., Ltd. v. Google LLC*, 847 F. App'x 910, 913-14 (Fed. Cir. 2021); *Donner Tech.*, 979 F.3d at 1359 (same). But regardless, Corephotonics has not argued

(much less established) that the Board identified a problem that the inventors were not concerned about.

The Board relied on substantial evidentiary support to determine that Martin was reasonably pertinent to the problem of reducing an image jump effect seen in video output images when switching between cameras that have different points of view. The Board first explained that, like the challenged patents, Martin discloses multiple cameras with differing fields of view (although it clearly intended to write *points* of view). Appx40; *see supra* at 57-58 n.6. Next, the Board rightly observed that Martin describes the problem it intended to solve in terms of its solution, which is adjusting the degree of image alignment to achieve a stable auto stereoscopic display in a region of interest. *See id.* (citing Appx5586 (Martin at 3:55-66, 4:10-24)). Stated differently, Martin addresses the problem of stabilizing the region of interest of an auto stereoscopic display, which the Board correctly concluded is reasonably pertinent to the problem of reducing image jumps in video output images. *See id.*

Corephotonics's arguments to the contrary do not undermine the Board's factual findings. Corephotonics cursorily declares that Martin is

not reasonably pertinent to the problem that the faced the inventors of the challenged patents because (1) Martin does not require switching between cameras; (2) Martin does not disclose cameras with different fields of view; and (3) Martin is not concerned with video zooming. *See* Op. Br. 49-50. But these declarations reveal that Corephotonics either misunderstands or misapplies the analogous art test.

The analogous art test does not require Martin to address the exact same problem that the inventors were attempting to solve to qualify as analogous art, as Corephotonics argues. *Ethicon LLC v. Intuitive Surgical, Inc.*, 2022 WL 1576779, at *4 (Fed. Cir. May 19, 2022) ("[T]he analogous art test does not require that the references use the exact same words to describe the problem that they seek to solve."). Rather, Martin must be "reasonably pertinent to the problem with which the inventor was involved." *Id.* That is, Martin needs only to have "logically . . . commended itself to [the] inventor's attention in considering his problem." *See Circuit Check, Inc. v. QXQ Inc.*, 795 F.3d 1331, 1335 (Fed. Cir. 2015) (quoting *In re Clay*, 966 F.2d 656, 659 (Fed. Cir. 1992)).

That Martin and the challenged patents differ in some ways does not render them non-analogous. To the extent that the Board suggested

that Martin and the challenged patents were not in the same field of endeavor, *see* Appx40, "there will frequently be significant differences between a patent and a reference from a different field of endeavor, *Donner Tech.*, 979 F.3d at 1361. "But it does not follow that such a reference is, for that reason alone, not reasonably pertinent to one or more problems to which the claimed invention relates." *Id.* To the contrary, the Board reasonably concluded that "Martin's teaching[s] of critical alignment does not appear to be divergent from or incompatible with . . . the objectives of the [challenged] patent." *See* Appx34. Additionally, the Board credited Dr. Durand's testimony that "[i]t is well known in the art that for seamless transition between two images of different points of view in continuous zoom video applications . . . , image registration of two images from two imaging sections for position matching (e.g., critical alignment of Martin) may be used." Appx35-36.

## II. The Board Correctly Construed "Effective Resolution" And Substantial Evidence Supports The Board's Finding That Togo Teaches The "Effective Resolution" Limitation.

Dependent claims 4 and 5 ('898 patent) and dependent claims 5 and 17 ('332 patent) recite that "the no-switching criterion includes an effective resolution of the Tele image being lower than an effective

resolution of the Wide image." Appx163-164 (12:54-56; 14:9-11); Appx178-179 (12:65-67; 14:11-13). The Board appropriately determined that the plain and ordinary meaning of the term "effective resolution" is "image quality including but not limited to blurriness and sharpness." Appx57. And based on that construction, the Board accurately found that Togo taught the dependent claim limitation.

## A. The Board's construction of the term "effective resolution" adheres to the intrinsic record.

Corephotonics does not dispute that the limitation at issue recites "effective resolution." Nor does it dispute that "effective resolution" is a commonly understood term with a widely-accepted meaning. And there is furthermore no dispute that "effective resolution" means "image quality including but not limited to blurriness and sharpness" in common parlance. Rather, the dispute here is whether the claim means what it says—i.e., "effective resolution"—or whether the claim means what it does not say—i.e., "effective resolution score."[7] *See* Op. Br. 51; Appx1214 (PO Response); Appx6752 ¶ 88.

---

[7] The specifications of the challenged patents define "effective resolution score" as a "score [that] is calculated only in a region of interest (ROI) and provides a good indication of the effective resolution level in the

The Board correctly refused Corephotonics's request to read an unclaimed limitation (i.e., score) from the specification into the claims. Appx56-57. This Court has stated time and time again that limitations from the embodiments in the specification are not to be read into the claims. *See, e.g.*, *Hill-Rom Servs. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014) ("While [this Court] read[s] claims in view of the specification, of which they are a part, [it] do[es] not read limitations from the embodiments in the specification into the claims."). Thus, pursuant to this Court's longstanding precedent, the Board "decline[d] to agree with [Corephotonics's] implicit request to limit effective resolution to calculating an effective resolution score" because "[t]here is no indication that the patentee intended to limit the claim in that way or redefine effective resolution to be something that can only be determined by an effective resolution score." Appx56.

The Board found "neither lexicography nor disavowal" to justify departing from the plain meaning of "effective resolution." *See* Appx56*; Luminara Worldwide, LLC v. Liown Elecs., Co.*, 814 F.3d 1343, 1353

---

image." Appx160 (6:16-18). The specification further discloses that "[t]he effective resolution score can be derived from a combination of the sharpness scores and edge scores for each image." *Id.* at (6:20-22).

(Fed. Cir. 2016) ("Absent lexicography or disavowal, we do not depart from the plain meaning of the claims."). As proof positive of the Board's accuracy, the specification explicitly discloses that "[i]n some exemplary embodiments, the no-switching criterion includes an *effective resolution* of the Tele image being lower than an *effective resolution* of the Wide image." Appx159 (4:65-67) (emphases added). That a different embodiment involves a no-switching criterion that includes an "effective resolution *score* of the Tele image [that] is lower than that of the Wide image," *see* Appx162 (10:15-16) (emphasis added), does not limit the claim language. *See, e.g., Hill-Rom*, 755 F.3d at 1371.

## B. The Board did not err in finding that Togo teaches the effective resolution no-switching limitation.

The Board found that Togo discloses a no-switching criterion that includes "an effective resolution of the Tele image being lower than an effective resolution of the Wide image." Appx57. That is, applying the Board's construction of "effective resolution," Togo teaches that switching from the Wide to Tele does not occur when the image quality (e.g., sharpness or blurriness) of the Tele image is lower than that of the Wide image. *See* Appx56-57 (Board citing to the Petition (Appx1060-1062)). Substantial evidence more than supports the Board's finding.

1.   **Substantial evidence supports the Board's finding that Togo teaches the effective resolution no-switching limitation.**

First, the Board credited the expert testimony of Dr. Durand. Dr. Durand opined that Togo teaches the no-switching effective resolution limitation because "Togo's image quality no-switching criterion compares image quality . . . , where Togo describes image quality including blurriness and sharpness. Appx5511 ¶ 135. And the Board was well within its discretion to conclude that Dr. Durand won the battle of the experts. *Aker Biomarine Antarctic AS v. Rimfrost AS*, 786 F. App'x 251, 254 (Fed. Cir. 2019) (explaining that the Board is well within its discretion to credit one expert over another).

Second, the Board relied on Togo's disclosure. According to Togo, "a telephoto imaging module . . . is *less sharp* at close distances compared to a wide-angle imaging module." Appx5681 at [0012] (emphasis added); Appx1061. Togo also discloses that the telephoto image is "blurry" when the distance between the mobile device and the subject to be photographed is short. *See* Appx5685 at [0057]; Appx1061. So, when the photographed subject is close to the camera, the wide-angle image has better quality than the telephoto image. *See* Appx5685 at [0058].

67

As to the no-switching criterion, Togo teaches "[a] determination criterion" of when to switch to a digitally zoomed telephoto image and when to instead use a digitally zoomed wide-angle image:

> When the setting magnification X ≥ A and the imaging distance Y ≤ B, a digitally zoomed image of the . . . wide-angle image . . . is generated.

> When the setting magnification X ≥ A and the imaging distance Y > B, a digitally zoomed image of the . . . telephoto image is pasted in a center portion of the wide-angle image.

*See* Appx5685-5686 at [0049], [0062]-[0064], [0067], [0069] (when a pixel density of the telephoto image is greater than the enlarged wide-angle image, compositing or switching to the telephoto image becomes effective).

Finally, at the oral hearing, the Board inquired about Togo's no-switching effective resolution criterion and thoroughly considered the parties' responses. Counsel for Apple, when answering this line of questioning, comprehensively explained that:

> "[I]t is well known in the art that objects at a close distance are a problem for telephoto lenses and often the wide-angle lens will be the better lens because they can focus on it whereas the telephoto cannot. That's an image problem. It's a resolution problem. It's a fuzziness problem if you want to talk about it that way. It's a blur problem. But we know that it's a problem simply because the object is close. We could measure the blur. We could measure the degradation of

resolution as well. Those are all options that could be done. But we don't have to. We can simply know that when an object is this close, it's going to be blurring in the telephoto lens. I'm not going to switch. That's my no-switching criterion.

Appx1382-1383 (31:10-32:13).

> ### 2. Corephotonics's argument that Togo fails to teach the effective resolution switching criterion limitation lacks both support and merit.

Corephotonics argues that the Board's construction of "effective resolution" requires the effective resolution switching criterion to be blurriness or sharpness themselves and not an intermediate indicator of blurriness or sharpness, such as the distance between the camera and the photographed subject. See Op. Br. 52. Corephotonics yet again attempts to impermissibly read limitations into the claim language. As the Board explained, "the patentee drafted the claim broadly to require only an 'effective resolution' of one image to be lower than the effective resolution of another." Appx57. The claim language places no requirements on how the effective resolution (i.e., the image quality including but not limited to blurriness and sharpness) is determined. Nor does it require any specific way of comparing the effective resolution of the Wide and Tele images, respectively. And moreover, Corephotonics

has not provided any support from the intrinsic evidence, extrinsic evidence, or otherwise for why the dependent claims should be so limited.

Togo need not teach undisclosed limitations, and the Board correctly considered it under § 103 for all that it does teach. *See Raytheon Techs. Corp. v. GE Co.*, 993 F.3d 1374, 1380 (Fed. Cir. 2021). In addition, the Board reasonably rejected Corephotonics's argument that Apple must demonstrate bodily, or physical incorporation of Togo's teachings with the teachings from the other references with which Togo is combined (i.e., Golan and Martin). Appx43. The Board rightly credited Dr. Durand's testimony that the combination of Togo into the digital camera of Golan and Martin "would have been no more than the combination of known elements according to known methods" and would "not require physical incorporation." *See* Appx44; Appx5476-5477 ¶69. As Dr. Durand explained, "[t]o the extent that any modification[s] would have been needed . . . such modifications would have been within the level of ordinary skill in the art. Appx5477 ¶ 69; Appx1038.

70

# CONCLUSION

For the foregoing reasons, this Court should affirm the Board's Final Written Decisions in the -861 IPR and in the -862 IPR.

Respectfully submitted,

*/s/ Erin M.B. Leach*
Erin M.B. Leach
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
2050 Main Street, Suite 1100
Irvine, CA 92614
(949) 852-7766

Mark S. Davies
ORRICK, HERRINGTON &
  SUTCLIFFE LLP
1152 15th Street, NW
Washington, DC  20005

*Counsel for Appellee*

November 22, 2022

## **CERTIFICATE OF COMPLIANCE**

The brief complies with the type-volume limitation of Fed. Cir. R. 32(b)(1) because this brief contains 13,099 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b)(2).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Century Schoolbook 14-point font.

ORRICK, HERRINGTON & SUTCLIFFE LLP

*/s/ Erin M.B. Leach*
Erin M.B. Leach
*Counsel for Appellee*