**Nos. 22-1455, -1456**

# United States Court of Appeals
# for the Federal Circuit

COREPHOTONICS, LTD.,

*Appellant,*

*v.*

APPLE INC.,

*Appellee.*

Appeals from the Patent Trial and Appeal Board in *Inter Partes* Review Nos. IPR2020-00861 and IPR2020-00862

## REPLY BRIEF OF APPELLANT COREPHOTONICS, LTD.

Marc A. Fenster
mfenster@raklaw.com
Brian D. Ledahl
bledahl@raklaw.com
Neil A. Rubin
nrubin@raklaw.com
James. S. Tsuei
jtsuei@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
(310) 826-7474

*Counsel for Appellant
Corephotonics, Ltd.*

December 16, 2022

## RELEVANT REPRESENTATIVE CLAIMS FROM PATENTS AT ISSUE

### Patent No. 10,230,898 (IPR2020-00861) (Appx163)

1. A zoom digital camera comprising:

   a) a Wide imaging section that includes a fixed focal length Wide lens with a Wide field of view (FOV) and a Wide sensor, the Wide imaging section operative to provide Wide image data of an object or scene;

   b) a Tele imaging section that includes a fixed focal length Tele lens with a Tele FOV that is narrower than the Wide FOV and a Tele sensor, the Tele imaging section operative to provide Tele image data of the object or scene; and

   c) a camera controller operatively coupled to the Wide and Tele imaging sections and configured to evaluate if a no-switching criterion is fulfilled or not fulfilled, wherein if the no-switching criterion is fulfilled in a zoom-in operation between a lower zoom factor (ZF) value and a higher ZF value at a zoom factor (ZF) higher than an up-transfer ZF, the camera controller is further configured to output a zoom video output image that includes only Wide image data, and wherein if the no-switching criterion is not fulfilled, the camera controller is further configured to output a zoom video output image that includes only transformed, digitally zoomed Tele image data.

\* \* \*

4. The camera of claim 1; wherein the no-switching criterion includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image.

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

### CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2022-1455, 22-1456 |
| **Short Case Caption** | Corephotonics, Ltd. v. Apple Inc. |
| **Filing Party/Entity** | Corephotonics, Ltd. |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 12/16/2022

Signature: /s/ Brian D. Ledahl

Name: Brian D. Ledahl

FORM 9. Certificate of Interest

Form 9 (p. 2)
July 2020

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☐ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☐ None/Not Applicable |
| Corephotonics, Ltd. | | Samsung Electronics Benelux B.V. |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐   Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Jonathan Link (of Russ August & Kabat) | C. Jay Chung (formerly of Russ August & Kabat LLP) | |
| | | |
| | | |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☐    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| Corephotonics, Ltd. v. Apple Inc., Case No. 5:19-cv-04809 (N.D. Cal.) | | |
| | | |
| | | |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable          ☐    Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTEREST ................................................................... ii

TABLE OF AUTHORITIES .................................................................... vi

INTRODUCTION ................................................................................. 1

ARGUMENT ....................................................................................... 2

I.   The Board's Consideration Of Apple's Belated Analogous Art Arguments Was Reversible Error ...................................................................................... 2

II.  The Board's Analogous Art Findings Erroneously Departed From Apple's Belated Analogous Art Contentions And Were Not Supported By Substantial Evidence ........................................................................................... 7

III. The Board Erred By Relying On Togo To Teach The "Effective Resolution" Limitation Of The Dependent Claims ........................................................... 11

     A.  The Board Erred In Construing "Effective Resolution" ................................ 11

     B.  The Board Erred In Finding Togo Taught Use Of Effective Resolution As A No Switching Criterion ...................... 14

CONCLUSION ................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Graham v. John Deere Co.*,
   383 U.S. 1 (1966) ............................................................... 2, 6

*In re Clay*,
   966 F.2d 656 (Fed. Cir. 1992) ..................................... 2, 3, 6

*Valmont Indus., Inc. v. Lindsay Corp.*,
   730 Fed. App'x 918 (Fed. Cir. 2018) ............................... 6

*Wasica Finance GmbH v. Continental Automotive Systems, Inc.*,
   853 F.3d 1272 (Fed. Cir. 2017) ..................................... 3, 4

**STATUTES**

35 U.S.C. § 312(a)(3) ............................................................. 3

# **INTRODUCTION**

Apple relied on combinations of multiple references to contend that the relevant claims of the challenged patents are obvious under Section 103.  To support such a contention, Apple must demonstrate that the references on which it relies are part of the prior art for the challenged patent.  This requires showing that the references are "analogous" to the challenged patent.  Apple does not dispute that it failed to present any proper evidence or argument in its petition to support a finding that the references on which it relied are analogous art.  Apple characterizes its complete failure of proof as a "procedural" argument.  But Apple's failure is anything but procedural.  Apple essentially argues that so long as its petition referenced the name of the element it needed to prove (analogousness), the failure to actually support that element in its petition is inconsequential.  Apple's petition lacked evidence or argument to support a necessary element of its claim for invalidity.  This alone required a rejection of Apple's petition.  Moreover, the Martin reference on which Apple relied was most certainly not analogous art to the patent in suit.  It did not, as Apple asserts, involve transitioning between two cameras. Instead it involved simultaneously combining the images from two cameras to make a single, composite, three-dimensional image.  The Board also made multiple errors in finding that the Togo reference disclosed the additional elements of challenged dependent claims.

# **ARGUMENT**

## I.    **The Board's Consideration Of Apple's Belated Analogous Art Arguments Was Reversible Error**

Apple's Petitions asserted obviousness as the ground for invalidity, based on a combination of multiple references.  To support such a claim, Apple was required to prove that each reference on which it relied was properly considered as prior art to the challenged claims. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).  To be prior art, a reference must be "analogous" art to the challenged patent claims. *In re Clay*, 966 F.2d 656, 658 (Fed. Cir. 1992).  Whether a reference is "analogous" may be determined by one of two criteria: 1) if the art is from the same field of endeavor as the challenged claims, or 2) if the art is not within the same field of endeavor, but is still reasonably pertinent to the particular problem with which the inventor (of the challenged claims) is involved. *Id.* at 658-659.

Apple does not dispute that its petitions failed to make a showing that any of the references on which it relies were "analogous" art under either of the two criteria for making such a determination.  This should end the entire inquiry.  Apple's petitions failed to provide any proper evidence or argument that any reference on which it relied was within the prior art of the challenged claims.  The Board's failure to recognize this complete absence of a necessary element to support Apple's claims was clear error requiring reversal.

The Board incorrectly excused Apple's failure of proof by permitting Apple to submit an entirely different argument based on entirely new evidence in its reply. But, as this Court holds, "[s]hifting arguments in this fashion is foreclosed by statute, our precedent, and Board guidelines." *Wasica Finance GmbH v. Continental Automotive Systems, Inc.*, 853 F.3d 1272, 1286 (Fed. Cir. 2017) (citing 35 U.S.C. § 312(a)(3)). The Board's failure to follow the statutes governing its authority is a legal error reviewed *de novo* by this Court. This error, standing alone requires reversal as to all grounds of unpatentability found by the Board.

Apple argues that the Court should ignore this manifest error because Apple recited the words "analogous art" in its petition, and that this incantation alone was sufficient to permit Apple to submit entirely new theories and evidence in its reply as long as they related to the concept of analogous art. It characterizes this issue as merely "procedural." Red Brief at 1. A complete failure of proof as to a required element of the petition is hardly a procedural problem. Apple does not suggest that its petition presented any evidence or argument that the Golan reference was analogous to the challenged patents under either of the criteria set forth in *Clay*. It likewise does not argue that it presented any evidence or argument that the Martin reference was analogous to the challenged patents in its petition. Rather, Apple concedes that the only evidence or argument that it presented on this issue in its petition was that the two references were from the same field of endeavor **as each**

**other**.  This showing was entirely irrelevant to any issue in the petition and could not have carried Apple's burden of showing that each reference was a part of the prior art **of the challenged patents**.

Apple suggests that it should be permitted to submit entirely new arguments and evidence in reply because they were in response to arguments made in the Patent Owner Responses.  But the Patent Owner Responses pointed to Petitioner's failure to establish that the relied upon references were, in fact, analogous art.  *See* Appx1196-1204.  Under Apple's theory of reply, as long as a petition refers to some legal conclusion, the petitioner may submit any entirely new evidence and argument on reply as long as it relates to that legal conclusion in some way.  This Court expressly rejected Apple's argument in *Wasica*.  *Wasica*, 853 F.3d at 1286-87 (holding that merely pointing to an embodiment in a reference and arguing that any differences between that embodiment and the challenged claim would have been obvious did not allow a new argument about how obviousness could be found from the same reference in the reply).

Apple presented no evidence or argument in its petitions that the Golan reference was in the same field of endeavor as the challenged claims.  It argued only that it was in the same field of endeavor as the Martin reference.  The Board improperly permitted Apple to argue for the first time in reply that Golan was in the

same field of endeavor as the challenged claims.  The Board's acceptance of this new evidence and argument was a legal error requiring reversal.

Similarly, Apple presented no evidence or argument in its petitions that the Martin reference was in the same field of endeavor as the challenged claims.  It argued only that it was in the same field of endeavor as the Golan reference.  The Board did not find that Martin was in the same field of endeavor as the challenged claims.  Rather, it credited an argument that was completely absent from the petitions – that Martin was addressed to the same problem as the challenged claims.[1]  Apple presented no evidence or argument in its petition that Martin was addressed to the same problem as the challenged claims.  The Board lacks any statutory authority to manufacture new theories that are absent from the petition.  The Board exceeded its authority to consider any argument that Martin was addressed to the same problem as the challenged claims. Apple does not meaningfully dispute that without such consideration, its petition would fail.

Apple also argues that Corephotonics should not be able to challenge the Board's Final Written Decision because, Apple contends, such a challenge is effectively a challenge to the Board's institution decision, which is not subject to appellate review.  Apple's argument relies on neither logic nor authority.  IPR

---

[1] The Board's conclusion in this regard was also erroneous, as addressed in the following section. Even considering the argument, however, was a legal error.

proceedings necessarily flow from the Petition.  If the Petition fails to prove invalidity, it must be rejected.  No court has suggested that this Court lacks the authority to review a Final Written Decision issued by the Board, even if the error in that Final Written Decision was also manifest in the Board's institution decision.  This is the case in every IPR in which the Board institutes a trial, but this Court has often reversed the Board's Final Written Decisions, regardless of whether the error by the Board was also present in the institution decision.  The non-precedential decision on which Apple relies does not support its argument.  The Court there rejected an argument that a petitioner could not submit further evidence of any kind in reply, but said nothing about a petitioner submitting evidence and argument in reply to support a theory that was not even present in the petition.  *See Valmont Indus., Inc. v. Lindsay Corp.*, 730 Fed. App'x 918, 923 (Fed. Cir. 2018).

Apple also argues that it had no obligation to address analogousness of the purported prior art references in its petitions.  Apple cites no case from this Court supporting its position, but rather only cites to decisions of PTAB panels in other proceedings that have no precedential effect at this Court.  Apple's arguments fly in the face of governing Supreme Court precedent that a critical element of any obviousness contention is to show that the references relied upon were within the prior art.  *Graham*, 383 U.S. at 17 (1966).  Showing that a reference is within the prior art requires a showing that it is analogous.  *Clay*, 966 F.2d at 658 (Fed. Cir.

6

1992). Apple points to no decision of this Court which suggests that a petitioner need not prove, in its petition, that the references on which it relies are within the prior art of the challenged claims. Apple asserts that a showing of analogousness is "extrinsic to a showing of *prima facie* obviousness." Red Brief at 41-42. The binding precedents of the Supreme Court and this Court say the opposite – a challenger must prove that the references relied upon are within the prior art – and thus must show that they meet one of the analogousness criteria. Apple simply failed to meet this element of its claim.

Because the Board improperly considered and relied upon evidence and arguments for invalidity that were entirely absent from Apple's petitions, it exceeded its statutory authority. Had the Board stayed within its proper authority, Apple cannot dispute that its petitions failed to establish invalidity of the challenged claims. Apple did not merely offer permissible additional evidence and argument in support of the theory articulated in the petitions. It impermissibly offered entirely new theories. Accordingly, the Board's Final Written Decisions must be reversed.

## II. The Board's Analogous Art Findings Erroneously Departed From Apple's Belated Analogous Art Contentions And Were Not Supported By Substantial Evidence

Even if Apple had articulated in its petitions the grounds for finding Golan and Martin to be analogous art on which the Board ultimately relied, the Board's determination still is not supported by substantial evidence. We focus particularly

on the Board's erroneous determination that Martin is directed to the same problem as the challenged claims. That determination by the Board cannot withstand even minimal scrutiny. In finding Martin to be analogous, the Board described the claims of the challenged patents and Martin as both being directed to the problem of "reducing an image jump effect seen in video output images when switching between cameras that have different fields of view." Appx40; Appx114-115. The Board failed, however, to identify any substantial evidence that Martin was, in fact, directed to this problem. Martin was not in any way directed to this problem.

The Board described Martin as concerning "a method for generating an autostereoscopic display by aligning a first parallax image and at least one other parallax image." Appx12; Appx87. In more plain English, Martin is about combining two images of the same scene captured from different locations into a single image that appears three-dimensional. Martin did not describe anything about different fields of view, as the Board suggested, nor did it describe anything about jump effects seen in video output images when switching between cameras with different fields of view.

Part of the difficulty here seems to arise from the Board's apparent failure to recognize the difference between Field of View (the issue relevant to the challenged claims) and Point of View (the issue relevant to Martin). Field of View involves the necessary differences between wide and tele imaging. In simple terms, the Field of

View of a wider lens and sensor will be different than the Field of View of a relatively narrower tele lens and sensor, even if the two are located at the exact same physical location.  A wider Field of View of a wider lens might capture an entire city skyline, for example, while a narrower Field of View from the same location might capture only a single building in that same skyline.  The Board points to nothing in Martin that has anything to do with the Field of View of two imaging systems.  Point of View, by contrast, relates to the position from which an image is captured.  For example, a photograph taken of a person from their left side will have a different Point of View than a photograph of the same person (at the same time) taken from their right side, even if the two photographs are taken by identical cameras with identical Fields of View.

Martin deals only with cameras at different points of view.  Apple concedes that the Board erred in suggesting that Martin related to switching between cameras with different Fields of View.  Red Brief at 57, n.6.  But this concession is fatal to the Board's findings.  To simulate three-dimensional images, Martin uses images of a scene captured in two different Points of View and alternates them to create the illusion of a three-dimensional image.  *See* Appx13; Appx88.  Martin addresses the possibility of aligning the images from the different Points of View to simulate a single, composite three-dimensional view.  None of this addresses the problems or issues of transitioning between different Fields of View when zooming in or out

using multiple cameras (which are located in close proximity to one another to minimize any difference in the Point of View). But the Board identified the problem addressed by the challenged claims as addressed to switching between different Fields of View (not Points of View, which Apple concedes was the problem to which Martin was addressed).

Apple fails to point to substantial evidence supporting the Board's decision. Instead, Apple repeatedly tries to rewrite the Board's Final Written Decision to suggest that both Martin and the challenged patents addressed the problems of switching between cameras with different Points of View. *See, e.g.*, Red Brief at 61. Apple must do this because it concedes that the Board erred. But the Board's error was not a mere typographical error as Apple contends. Rather, the Board recognized that the challenged claims related to transitioning between cameras with different Fields of View.[2] But the Board provided no support (nor could it) for the proposition that Martin was addressed to this problem. Apple effectively concedes that the decision the Board actually rendered lacks substantial evidence. Apple instead tries to rewrite the Board's decision and then tries to suggest that hypothetical decision could have been supported. Apple must point to substantial evidence supporting the

---

[2] Apple attempts to argue that the Board intended to refer to Point of View with respect to both the challenged patent and the Martin reference, but it provides no support that this was in fact the Board's understanding of the challenged claims. The Board only described the challenged patent as directed to switching between camera sections with different Fields of View. Appx3-4; Appx77-79.

Board's actual decision, not to a different decision that the Board did not make. Further, as discussed above, even the hypothetical decision that Apple postulates (but that the Board never made) would not support its findings of invalidity because it would not accurately characterize the challenged claims. Ultimately, the challenged claims are directed to a different problem entirely than that addressed by Martin. The Board's contrary decision contains errors that even Apple admits, and lacks substantial evidence to support it. This provides an additional and independent reason that the Board's findings must be reversed.

## III.    The Board Erred By Relying On Togo To Teach The "Effective Resolution" Limitation Of The Dependent Claims

The Board made multiple errors in relying on the Togo reference to teach the elements of dependent claims (such as claim 4 of the '898 patent) requiring that the no-switching criteria of claim 1 "includes an effective resolution of the Tele image being lower than an effective resolution of the Wide image." Appx163.

### A.    The Board Erred In Construing "Effective Resolution"

First, the Board incorrectly construed "effective resolution" in a manner inconsistent with the patent's specification and claim language. As noted in the Blue Brief, the patent specification describes "effective resolution" in a section of the specification labeled "Definitions." Appx160 at Col. 6:3 and 6:16-24. That definition describes effective resolution as an "Effective resolution score." The

Board blithely suggested that this passage was not lexicographic despite the fact that it appears in a portion of the specification labeled as "Definitions," the epitome of lexicography. *See* Appx55-56; Appx130.

Rather than recognize the clear lexicography of the patent specification, the Board manufactured its own vague construction of effective resolution as "image quality including but not limited to blurriness and sharpness." Appx57; Appx131. The Board's construction fails on multiple levels. As noted above it ignores the explicit definitional teaching of the specification. The Board's construction also fails to rationally comport with the context in which the claim uses the term. Claim 4 of the '898 patent, for example, requires "the no switching criterion includes an effective resolution of the Tele image being **lower than** an effective resolution of the Wide image." Appx163 (emphasis added). The patent teaches the use of effective resolution scores – measurements that can be compared to determine whether one is lower than another. The Board's construction fatally ignores this concept required by the claims and instead creates a construction of some fuzzy and undefined concept that is not readily susceptible to determining that one image has a higher or lower effective resolution than the other. Thus, the Board's construction improperly ignores the context in which the term appears in the claim. While effective resolution scores taught in the patent can be compared as required by the

claim, the Board's vague concept of "image quality" does not facilitate such comparison.

Apple merely repeats the trope that construing this term correctly would import a limitation from the specification embodiments into the claims. Apple offers no explanation of why the discussion in the specification should not be understood to be lexicographic, particularly given its appearance in the "Definitions" section of the specification. Apple suggests that the specification discloses embodiments that use an effective resolution without an effective resolution score by pointing to a summary passage at column 4:65-67 of the '898 patent specification. Appx159. But that passage does not provide a description of a different embodiment – rather it refers in summary form to the use of effective resolution as the no-switching criteria before providing a definitional discussion of effective resolution as a score in the actual detailed discussion of embodiments. Apple points to no actual embodiments that use any supposedly different aspect of "effective resolution" than an effective resolution score. The only detailed discussion of an actual embodiment involving effective resolution appears at column 10 of the specification, where the patentee specifically discusses using the effective resolution score (in precisely the manner used in the claims). Appx162 at Col. 10:15-19. Apple's attempt to defend the Board's faulty reasoning lacks any basis in the actual intrinsic record. The Board's erroneous construction should be rejected.

**B.    The Board Erred In Finding Togo Taught Use Of Effective Resolution As A No Switching Criterion**

Apple does not dispute that Togo fails to teach the effective resolution no-switching criterion if the Board's construction of "effective resolution" is rejected and a proper construction requiring the use of effective resolution scores is required. Apple does not suggest that Togo taught any kind of effective resolution score. Thus, correcting the Board's erroneous claim construction necessarily requires reversal as to dependent claims 4 and 5 of the '898 patent and claims 5 and 17 of the '332 patent.

Even if the Board's erroneous construction were not corrected, however, its Final Written Decision as to these dependent claims should be reversed for lack of substantial evidence that Togo teaches the relevant claim elements. The Board described Togo as addressed to switching determinations based on the distance between the subject and the camera (because image quality of the telephoto imaging system degrades with subjects close to the camera). Appx15; Appx19; Appx90; Appx94. The Board ultimately suggests that Togo's use of the closeness of objects in the image to the camera somehow teaches the use of effective resolution as the switching criteria. Once again, this is inconsistent with the specification of the challenged patents. In particular, the use of effective resolution in claim 4 (of the '898 patent) is distinct from the use of closeness of objects in the image to the

camera, which is recited in a different dependent claim, claim 6. Appx163. The patentee did not equate this concept of closeness (used by Togo) with the concept of effective resolution and the Board erred in equating the two.

The Board also suggests that since Togo makes vague mention of the existence of blurriness and sharpness as considerations, it teaches this claim element. Appx57; Appx132. But the Board points to nothing in Togo suggesting that blurriness or sharpness are 1) things that could actually be compared between two images, nor 2) that either blurriness or sharpness is a criteria that can be used as a no-switching criteria. The Board points only to paragraphs 11 and 12 of Togo. Appx5681. Those passages teach nothing about comparing the sharpness or blurriness of two images, nor of using such characteristics as no-switching criteria. The Board simply found the words "blurry" and "sharp" in Togo and concluded that this was sufficient teaching of the use of effective resolution as a no-switching criteria as required in the challenged claims. The Board's mere finding of isolated words in a reference is not substantial evidence that the reference actually teaches a feature of the challenged claims.

Apple fails to point to anything in the Board's decision or in the record that would constitute substantial evidence. Apple merely points to the same two paragraphs in Togo that merely use the words "blurry" and "sharp." Red Brief at 67. Apple offers nothing to show any teaching in Togo of the use of these general

concepts in connection with no-switching criteria, or indeed as criteria of any kind, nor any suggestion even of comparing them between two images. When Apple tries to refer to teaching of switching criteria in Togo, the discussion makes no mention of sharpness or blurriness. *See* Red Brief at 68. Instead, the only criteria discussed in Apple's quoted passages is "imaging distance." But Apple does not suggest that "imaging distance" constitutes effective resolution and the Board made no such finding. Thus, neither the Board nor Apple can connect the random mentions of "sharp" and "blurry" to any concept of a switching (much less a no-switching) criterion. Apparently recognizing the lack of any evidence supporting its position, Apple relies in its brief on quotations of arguments of counsel. Red Brief at 68-69. Such arguments, however, are not substantial evidence. The actual evidence in the record cannot support the Board's conclusions.

## <u>CONCLUSION</u>

For the foregoing reasons and those presented in Corephotonics' principal brief, the Board's final written decisions in the '861 IPR and the '862 IPR should be reversed or vacated.

Respectfully submitted,

December 16, 2022                    */s/ Brian D. Ledahl*
                                    Marc A. Fenster
                                    mfenster@raklaw.com
                                    Brian D. Ledahl
                                    bledahl@raklaw.com
                                    Neil A. Rubin
                                    nrubin@raklaw.com
                                    James. S. Tsuei
                                    RUSS AUGUST & KABAT
                                    12424 Wilshire Boulevard, 12th Floor
                                    Los Angeles, California 90025
                                    (310) 826-7474

                                    *Counsel for Appellant*
                                    *Corephotonics, Ltd.*

## CERTIFICATE OF COMPLIANCE
## WITH TYPE-VOLUME LIMITATIONS

The undersigned hereby certifies that the foregoing brief complies with the

relevant type-volume limitations of the Federal Rules of Appellate Procedure and

Federal Circuit Rules because the brief has been prepared using a proportionally

spaced typeface using Microsoft Word in 14-point or larger Times New Roman Font

or another proportionally spaced typeface with serifs and includes 3,814 words,

excluding the parts of the brief exempted under those Rules.

December 16, 2022                    */s/ Brian D. Ledahl*
                                     Brian D. Ledahl
                                     bledahl@raklaw.com
                                     RUSS AUGUST & KABAT
                                     12424 Wilshire Boulevard, 12th Floor
                                     Los Angeles, California 90025
                                     (310) 826-7474

                                     *Counsel for Appellant*
                                     *Corephotonics, Ltd.*